UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION
CASE NO.:  08-CV-21809-MARTINEZ/BROWN

| | |
|---|---|
| ALEJANDRA RAMOS and<br>MARIA ONELIA MACO CASTRO,<br><br>        Plaintiffs,<br><br>v.<br><br>JAVIER HOYLE and PATRICIA PERALES,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO DISMISS COUNTS II, IV, AND V FROM
## PLAINTIFFS' FIRST AMENDED COMPLAINT

Javier Hoyle and Patricia Perales file this Motion to Dismiss Counts II, IV, and V from Alejandra Ramos' and Maria Onelia Maco Castro's First Amended Complaint ("Complaint").

In 2002, Mr. and Mrs. Hoyle and Ms. Ramos executed an employment contract in Peru. Ms. Ramos agreed to act as the Hoyle's housekeeper and nanny in Puerto Rico and later in Key Biscayne, Florida.  In exchange, Mr. and Mrs. Hoyle provided a weekly salary, room and board, health care, and the legal fees associated with obtaining proper immigration authorization to work in the United States.

After Ms. Ramos left her employment, in 2006, Mr. and Mrs. Hoyle entered into an employment contract with Ms. Maco in Peru.   Ms. Maco agreed to act as the Hoyles' housekeeper and nanny in Key Biscayne, Florida.  In exchange, Mr. and Mrs. Hoyle provided a weekly salary room and board, and the legal fees associated with obtaining proper immigration authorization to work in the United States.   Subsequently, Ms. Maco left her employment.

Pursuant to their employment contracts, Ms. Ramos and Ms. Maco lived in the Hoyle home and received wages for their services.  Ms. Ramos and Ms. Maco each had a private room and bathroom, they received sufficient food, and they had days off when they would leave the Hoyle home.

In this lawsuit, Ms. Ramos and Ms. Maco claim Mr. and Mrs. Hoyle underpaid them and forced them to work.  In Count II, they claim Mr. and Mrs. Hoyle violated the Florida Minimum Wage Act ("FMWA").  In Count III, they claim Mr. and Mrs. Hoyle breached their employment contracts.  In Count IV, they claim Mr. and Mrs. Hoyle engaged in fraud.  In Count V, they claim Mr. and Mrs. Hoyle violated the Trafficking Victims Protection Reauthorization Act ("TVPRA").

The Court should dismiss Ms. Ramos' claim for violation of FMWA because the statute of limitations bars this claim.  The Court should dismiss the fraud claim because of the economic loss rule and because the allegations concern non-actionable statements of future acts.  Further, the Court should dismiss the TVPRA claim because Ms. Ramos and Ms. Maco do not allege all the necessary elements for such a claim.

## I. Background

A.    <u>The First Amended Complaint</u>.

Ms. Ramos and Ms. Maco allege the following:

Mr. and Mrs. Hoyle hired Ms. Ramos and Ms. Maco in Peru, and arranged for each woman to come to the United States as a housekeeper and nanny.  Complaint at ¶ 2.

Ms. Ramos and Ms. Maco each signed an employment contract which detailed their hourly wage and their working schedule.  Neither woman received a copy of the contract.  *Id*. at ¶ 12.  Initially, Mr. and Mrs. Hoyle told Ms. Ramos and Ms. Maco they would be responsible for certain duties.  Later, Mr. and Mrs. Hoyle added numerous additional duties, such as cleaning,

ironing, washing, and cooking. *Id.* at ¶ ¶ 13, 35, 75.  Also, Mr. and Mrs. Hoyle had Ms. Ramos and Ms. Maco work extra days and extra hours without compensation. *Id.* at ¶ ¶ 47, 77.

Ms. Ramos and Ms. Maco allege that Mr. and Mrs. Hoyle did not provide payment for all hours worked at the employment contract rate, the prevailing wage rate, or the minimum wage rate. *Id.* at ¶ 14.  In addition, Ms. Ramos and Ms. Maco claim Mr. and Mrs. Hoyle promised to maintain legal immigration status and work authorization for Ms. Ramos and Ms. Maco but did not. *Id.* at ¶ 22.  Ms. Ramos further claims she did not receive health insurance or access to medical services as promised. *Id.* at ¶ 50,  Moreover, Ms. Ramos and Ms. Maco allege that Mrs. Hoyle threatened to report them to immigration for deportation if they tried to escape. *Id.* at ¶ ¶ 44, 87.

Ms. Ramos and Ms. Maco left their jobs, and filed this lawsuit.

Ms. Ramos and Ms. Maco allege that Mr. and Mrs. Hoyle:

(i) violated the FLSA by failing to pay them at least the federally mandated minimum wage per hour for all the hours they worked;

(ii) violated the FMWA by failing to pay them at least the state mandated minimum wage and failing to prominently display a required notice advising them of their rights to be paid minimum wage per hour;

(iii) breached the employment contracts by failing to maintain their immigration status and paying them at the contract rate;

(iv) engaged in fraud by making false statements regarding the terms and conditions of their employment and the obtaining and maintenance of their immigration status and employment authorization in the U.S.; and

(v) violated the TVPRA by (a) threatening abuse of law or the legal process and (b) knowingly recruiting, harboring, transporting and obtaining them for labor and services.

## II. Argument

A.     <u>Motions to Dismiss</u>.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if the plaintiff does not plead facts that do not state a claim to relief that is plausible on its face. *Lopez v. Garcia-Montes*, No.08-21656-CIV, 2008 WL 2782738, at *2 (S.D. Fla. July 16, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "While a complaint attached for failure to state a claim upon which relief can be granted does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

B.     <u>Ms. Ramos Should be Dismissed from Count II because her Claim is Barred by the Statute of Limitations.</u>

The Court should dismiss Ms. Ramos' claim for violation of the FMWA (Count II) because the applicable statute of limitations bars these claims.

Florida Statute § 95.11(4) (which is incorporated into the FMWA) requires that an "action to recover wages or overtime or damages or penalties concerning payment of wages and overtime" must be commenced within two years.

The Complaint alleges Ms. Ramos began working for Mr. and Mrs. Hoyle in early 2002 in Peru. Complaint at ¶ 28. Later that year, Ms. Ramos and Mr. and Mrs. Hoyle executed an employment contract, and Ms. Ramos moved to Puerto Rico with Mr. and Mrs. Hoyle. *Id.* at ¶ ¶ 33, 36-37. In April 2004, Ms. Ramos moved to Key Biscayne, Florida with Mr. and Mrs. Hoyle. *Id.* at ¶ 55.

The Complaint alleges that on or about June 27, 2005, Ms. Ramos left her job with Mr. and Mrs. Hoyle. *Id.* at ¶ 64.

Under the circumstances, the statute of limitations for Ms. Ramos' claims under FMWA should start to run on June 27, 2005.   Since the Complaint was filed on June 24, 2008, the two year statute of limitations under FMWA bar the claim.

For these reasons, the Court should dismiss Ms. Ramos' FMWA claim.

C.      Count IV Should be Dismissed because of the Economic Loss Rule.

The Court should dismiss Ms. Ramos' and Ms. Maco's fraud claims based on the economic loss rule.  This rule flows from the essential distinction between economic and tort damages.

As the Florida Supreme Court has explained, economic damages exist to enforce contractual promises.  In short, a contract allocates the risk of failure.  When one party fails to live up to his obligations, the other can sue to enforce the promises.  Accordingly, economic damages can provide compensation for receiving inadequate value, the costs of repair or replacement of a defective product, or loss of profit.  Ultimately, economic losses compensate for "disappointed economic expectations." *See Casa Clara Condo. Assoc., Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993).

By contrast, tort recoveries exist to protect the public from general harm.  The tort victim has no formal relationship with the person who creates the harm — there is no agreement to allocate any risks.  In fact, the injured person is merely a victim of an individual's negligent or intentional behavior.  Because the tortfeasor is in the best position to prevent the harm, courts allow the victim to collect damages (even without any pre-existing relationship).  For this reason, a tort plaintiff must show harm "above and beyond disappointed expectations." *Id*. at 1246-1247.

Because of this distinction, the Florida Supreme Court has concluded that when there is economic loss by itself "contract principles are more appropriate than tort principles for recovery.

As Justice McDonald wrote: 'If we were to hold otherwise, contract law would drown in a sea of tort.'" *Id*. at 1247.

The result is the economic loss rule.  It prohibits tort recovery "when the alleged duty breached is derived from the contractual relationship." *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal citations omitted) (quoting *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1299 - 1300 (S.D. Fla. 2000)). *See also Samuels v. King Motor Co. of Fort Lauderdale,* 782 So.2d 489, 498 (Fla. 4th DCA 2001) (holding that the trial court properly granted a motion to dismiss the fraud claim with prejudice where the fraud alleged was fraud in the performance of a contract); *Premix-Marhletite Mfg., Corp. v. SKW Chem., Inc.*, 145 F. Supp.2d 1348, 1359 (S.D. Fla. 2001) (barring plaintiff's fraudulent inducement claim where fraud allegations were interwoven with the party's performance under an agreement); *Argonaut Dev. Group, Inc. v. SWF Funding Corp.*, 150 F. Supp.2d 1357, 1364 (S.D. Fla. 2001) (barring plaintiff's fraud claim based on the economic loss rule).

Ms. Ramos' and Ms. Maco's fraud claims are indistinguishable from their breach of contract claim.  In fact, Ms. Ramos and Ms. Maco acknowledge their fraud claim is based on Mr. and Mrs. Hoyle's statements and representations "regarding the nature, terms and conditions of [Ramos and Maco's] employment and the procedures for maintaining of immigration status and employment authorization." Complaint at ¶ 120.  Ms. Maco and Ms. Ramos claim these representations constitute the employment contract between the Ramos and Maco and Hoyle. *Id*. at ¶¶ 32-33, 71-72, 110-111.

Moreover, Ms. Ramos and Ms. Maco do not claim that Mr. and Mrs. Hoyle made any representations other than those constituting the parties' agreement.

For this reason, Ms. Ramos' and Ms. Maco's fraud claims fail as a matter of law and the Court should dismiss them based on the economic loss rule.

> D.  Count IV Should be Dismissed because Ms. Ramos and Ms. Maco's Allegations Concern Future Promises which are Not Actionable.

Even if the economic loss rule were not a bar, the fraud claim would still fail as a matter of law because the Complaint only identifies non-actionable future promises.

"It is a well established proposition that one cannot establish actionable fraud based on a promise to do something in the future unless there is proof that at the time the promise was made the promisor had no intention to fulfill the promise or as a matter of fact or a matter of law the person is unable to fulfill the promise." *In re Reinhart,* 89 B.R. 940, 942 (M.D. Bankr. 1988). *See also Argonaut Dev. Group, Inc.*, 150 F. Supp.2d at 1363 ("A promise made by a party for a fraudulent inducement claim may serve as a predicate for a fraudulent inducement claim only if the promise is made without any intention of performing it.").

Ms. Ramos' and Ms. Maco's fraud claim centers on the allegation that Mr. and Mrs. Hoyle "knowingly failed to disclose material facts to Plaintiffs RAMOS and MACO regarding the nature, terms and conditions of employment and the procedures for maintaining of immigration status and employment authorization, as well as providing tax documents and making required tax payments relevant to their employment in the United States." Complaint at ¶ 120.

While Ms. Ramos and Ms. Maco allege that the Hoyles "made materially false and deceptive statements and representations about future actions with no intent to fulfill those promises," (¶ 119) this sole conclusion cannot save the fraud the claim.  Ms. Ramos' and Ms. Maco's other allegations demonstrate that the Hoyles flew Ms. Ramos and Ms. Maco from Peru to Puerto Rico and Key Biscayne, and paid them for their services.  Therefore, Ms. Ramos and

Ms. Maco have not pled facts that state a fraud claim that is plausible on its face. *See Lopez v. Garcia-Montes*, 2008 WL 2782738, at *2. Consequently, the Court should dismiss this count.

      E.      <u>Count V Should be Dismissed because Ms. Ramos and Ms. Maco Failed to State All the Necessary Elements for a Claim under the Trafficking Victims Protection Reauthorization Act</u>.

The Court should also dismiss Ms. Ramos' and Ms. Maco's claim for violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Ms. Ramos and Ms. Maco have failed to allege all necessary elements for such a claim.

Ms. Ramos and Ms. Maco allege that Mr. and Mrs. Hoyle violated Section 1589 by:

  (i) "knowingly attempting and obtaining the labor and services of Plaintiffs using a scheme, plan or pattern, which in the totality of the circumstances, was intended to coerce Plaintiffs to believe they would suffer serious harm if they were to leave the employ of Defendants;" and

  (ii) "knowingly providing and obtaining the labor and employment of Plaintiffs by means of threatened abuse of the law or legal process. Complaint at ¶ ¶ 130, 132.

Ms. Ramos and Ms. Maco allege that the Hoyles violated Section 1590 by "knowingly recruiting, harboring, transporting and obtaining Plaintiffs RAMOS and MACO for labor and services in violation of the TVPRA" and the Hoyles "knowingly and willfully held Plaintiffs RAMOS and MACO in involuntary servitude by removing, confiscating, and keeping Plaintiffs' passports and other immigration documents in their possession and refusing to provide them to Plaintiffs." Complaint at ¶ ¶ 137, 138.

To bring a civil action under TVPRA, a plaintiff must allege the defendant violated Sections 1589, 1590 or 1591 of the statute. *See* 18 U.S.C. § 1595. Sections 1589 and 1590, respectively, state:

  Whoever knowingly provides or obtains the labor or services of a person--

  (1) by threats of serious harm to, or physical restraint against, that person or another person;

> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
>
> (3) by means of the abuse or threatened abuse of law or the legal process, shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

18 U.S.C. § 1589.

> Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

18 U.S.C. § 1590.

Ms. Ramos and Ms. Maco's allegations fall short for two reasons: (1) the Hoyles' statements to Ms. Ramos and Ms. Maco that they would lose their immigration status if they disappeared were truthful statements and do not constitute an abuse of legal process, and (2) the Hoyles' possession of their passports and immigration papers do not amount to involuntary servitude.

*Pasamaba v. HCCA International, Inc.*, No. CV-08-0247-PHX-NVW, 2008 WL 2562928, at *1 (D. Ariz. June 24, 2008), is instructive in this regard.

Pasamba, a Pilipino citizen, entered into an employment contract with HCCA. HCAA agreed to pay for Pasamba to become a licensed registered nurse in the U.S., to obtain a work visa for her to enter and work in the U.S., and to employ her as a nurse in a U.S. hospital. HCAA also told Pasamba she would receive wages comparable to those paid to nurses with her experience in the location were she would work. *Id.*

Under the employment agreement and its amendment, Pasamba signed a promissory note. Under the note, if Pasamba did not complete two years of work, she agreed to reimburse HCCA $60,000 for HCCA's expenses and costs directly attributable to her training, file preparation and maintenance, travel and other expenses and fees as well as HCCA's overhead and operating costs. *Id.* Pasamba did not last the two years.

Pasamba sued HCCA under § 1589 and § 1590. She claimed HCCA threatened to deport her before she was granted a work visa, moved to the U.S., and began employment. *Id.* at *5. At the same time, Pasamba did not allege she was forced to come to the U.S. and work in a hospital, or that HCCA prevented her from quitting, or that she received any threats of deportation or legal action that forced her to work. *Id.* at *5-6.

The court dismissed Pasamba's claims. It wrote:

> Whatever Defendants did after terminating Plaintiff's employment could not have forced her to continue working for HCAA, and Plaintiff has not alleged that she continued working for HCAA because of threats of legal action made during her employment. Moreover, warning of adverse but legitimate consequences to terminating her employment prematurely would not constitute abuse of process.

*Id.* at *6.

Ms. Ramos and Ms. Maco find themselves in the same position.

Even if Mr. and Mrs. Hoyle's told Ms. Ramos and Ms. Maco that the women could lose their immigration status if they disappeared, the statements were accurate descriptions of the situation. To be sure, the only basis for Ms. Ramos' and Ms. Macos' immigration status was the work visas which they obtained because Mr. and Mrs. Hoyle sponsored them.

As Peruvian nationals, Ms. Ramos and Ms. Maco had no fundamental right to reside and work in the United States. As part of the employment arrangements, Mr. and Mrs. Hoyle

sponsored Ms. Ramos and Ms. Maco for appropriate visas so the women could work as housekeepers and nannies in the U.S.

Once Ms. Ramos and Ms. Maco chose to stop working with Mr. and Mrs. Hoyle, Mr. and Mrs. Hoyle had the right to inform the Department of Homeland Security ("DHS") of this fact. First, if Mr. and Mrs. Hoyle wished to hire another alien employee, they would be obligated to obtain a similar visa.  Second, even if they did not intend to employ another alien, they would not want to be accountable for an individual who did not have status to live and work in the United States.  After all, Ms. Ramos and Ms. Maco lost their status to work in the United States once they left their jobs because their visas allowed them to work only for Mr. and Mrs. Hoyle.

Moreover, failing to report alien workers who are leaving while at the same time obtaining new visas for additional aliens could appear to be abuse of the immigration laws.

For these reasons, the Hoyles' so-called threats were not improper. *See also Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 74-75 (5th Cir. 1980) (acknowledging that "one has a right to threaten what he has a legal right to do" and that as "the employment contract [at issue] was terminable at will by either party, appellee's threat to discharge appellant is not actionable."); *City of Miami v. Kory*, 394 So.2d 494, 498 (Fla. 3d DCA 1981) ("it is not improper and therefore not duress to threaten what one has a legal right to do.").

Further, Ms. Ramos and Ms. Maco's allegations that they were held in involuntary servitude because the Hoyles had possession of their passports and immigration papers makes no sense in light of the following allegations:

- After several months, Plaintiff RAMOS was allowed roughly six (6) hours off each Sunday.  Complaint at ¶ 48.

- On numerous occasions in 2002 and 2003, Defendants HOYLE and PERALES went out of town and left Plaintiff RAMOS alone in the house with no food or other provisions. Complaint at ¶ 51.

- While Defendants HOYLE and PERALES were out of town in August 2003 Plaintiff RAMOS collapsed.  She was taken to a doctor by an acquaintance. The doctor advised Plaintiff RAMOS that she had medical problems related to diabetes and needed treatment.  Complaint at ¶ 52.

- Plaintiff RAMOS went with Defendants HOYLE and PERALES to Peru for roughly two (2) weeks in 2002 and 2003 and roughly five (5) weeks in 2004 in or around the end of December each year.  During that time, Plaintiff RAMOS continued her regular duties with the household for roughly one (1) week, and was only allowed to visit family. *Id*. at ¶ 57.

- On or about February 2005, Plaintiff RAMOS asked if she could attend an English class offered on Sundays at a nearby church and at that time requested her passport to register.  Defendants HOYLE and PERALES denied her request for her passport and gave her only a copy of her passport. *Id*. at ¶ 61.

- Defendants HOYLE and PERALES returned to Peru for a month in both 2006 and 2007 and left Plaintiff MACO one hundred dollars ($100.00) to buy food in anticipation for the family's return, for which they wanted receipts. Defendants left no money or provisions for Plaintiff MACO during the period in which the family was out of the country. *Id*. at ¶ 84.

- Defendant PERALES accompanied Plaintiff MACO to a nearby park where children and nannies congregated and pointed out specific individuals with whom Plaintiff MACO could not speak. *Id*. at ¶ 88.

Ms. Ramos and Ms. Maco cannot make a claim for involuntary servitude when their own allegations clearly reveal that the Hoyle family left them alone in the Hoyle home on numerous occasions for lengthy periods, and regularly allowed them out of the home.

Given these circumstances, Ms. Ramos' and Ms. Maco's fail to state a claim under the TVPRA.  The Court should dismiss this count.

*CASE NO. 08-CV-21809-MARTINEZ/BROWN*

### III. Conclusion

For the reasons set forth above, Defendants Javier Hoyle and Patricia Perales respectfully request that this Court enter an order dismissing Ms. Ramos from Count II, and dismissing Counts IV and V from Plaintiffs' First Amended Complaint, and award such other relief as the Court deems just and proper.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Counsel for Defendants*
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

BY:   /s/ Stephen James Binhak
    STEPHEN JAMES BINHAK
    Florida Bar No.  0736491
    binhaks@gtlaw.com
    SANDRA J. MILLOR
    Florida Bar No.  0013742
    millors@gtlaw.com

*CASE NO. 08-CV-21809-MARTINEZ/BROWN*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2008, I electronically filed the foregoing Defendants'
Motion to Dismiss Counts II, IV, and V from Plaintiffs' First Amended Complaint with the Clerk
of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all
counsel of record identified on the below Service List in the manner specified, either via
transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized
manner for those counsel or parties who are not authorized to receive electronically Notices of
Electronic Filing.

    /s/ Stephen James Binhak
    STEPHEN JAMES BINHAK

### Service List

**Ericka Deutsch Rotbart, Esq.**
DEUTSCH ROTBART & ASSOCIATES, P.A.
7251 West Palmetto Park Road
Suite 206
Boca Raton, Florida 33433

**Mary Gundrum, Esq.**
FLORIDA IMMIGRANT ADVOCACY CENTER
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137