IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRA RAMOS and                          CASE NO.:  08-CV-21809
MARIA ONELIA MACO CASTRO,                    MARTINEZ/BROWN

      Plaintiffs,

v.

JAVIER HOYLE and PATRICIA
PERALES,

      Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS II, IV AND V FROM PLAINTIFFS' FIRST
AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW, Plaintiffs, ALEJANDRA RAMOS RAMOS and MARIA ONELIA
MACO CASTRO, ("Plaintiffs") by and through their undersigned counsel, hereby files
their response in opposition to Defendant's Motion to Dismiss Counts II, IV and V from
Plaintiffs' First Amended Complaint.

I.      **Introduction**

Plaintiffs' filed their five (5) count First Amended Complaint on July 31, 2008
against their former employers, Defendants' Patricia Perales and Javier Hoyle alleging
violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq* ("FLSA"), the Florida
Minimum Wage Act, 2007 Fla. Stat. § 448.110 ("FMWA"), Breach of Contract, Fraud, and
for violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589
*et. seq* ("TVPRA").  Defendants' filed their Motion to Dismiss Counts II, IV and V from
Plaintiffs' First Amended Complaint; however, Defendants do not move to dismiss
Plaintiffs' contract or Fair Labor Standards Act claims or Plaintiff Castro's FMWA claim

1

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

and thus, Plaintiffs' are merely addressing those claims specifically sought to be dismissed by Defendants.  For the reasons that follow, Defendants' Motion to Dismiss three of Plaintiffs' claims (Plaintiff Ramos' Florida Minimum Wage Act (FMWA) claim; both Plaintiffs' fraud claim; and both Plaintiffs' TVPA claims) finds no support in the law, and therefore, Defendant's Motion should be denied in its entirety.

First, Plaintiff Ramos' claims under the Florida Minimum Wage Act ("FMWA") should not be dismissed because Defendants' violations of the law were willful and principles of equitable tolling apply; therefore, the statute of limitations is no bar to her claim.  Second, the claim of both Plaintiffs for fraud includes allegations that Defendants made fraudulent misrepresentations of existing fact to induce Plaintiffs to agree to the employment contract and made actionable promises of future action.  These allegations state a claim for fraud.  Further, when fraud in the formation of the contract or damages including physical injury are alleged, the economic loss rule does not bar recovery. Third, Defendants' threats to Plaintiffs constituted an abuse of legal process that subjected Plaintiffs to trafficking for forced labor and involuntary servitude.  This claim is based on Congress' intent in drafting the Trafficking Victims Protection Reauthorization Act ("TVPRA") and decisions interpreting the Act.  Therefore, Defendants' challenge to the complaint fails to meet the demanding standards required to sustain a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## II.   **Standard Applicable for a Motion to Dismiss**

The Federal Rules of Civil Procedure require only that the pleadings provide a short and plain statement putting the other side on notice of the claims the party intends to assert. Fed. R. Civ. P. 8; <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

2d 90 (1957). Every fact that supports the claim need not be alleged. That is what discovery is for. As long as the complaint puts the defendant on notice of what the plaintiff's claim is, the complaint states a claim. A complaint cannot be dismissed for failure to state a claim upon which relief may be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claims which would entitle [her] to relief." Conley, 355 U.S. at 45-46 (quoted in Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994 (11th Cir. 1983)).

On a motion to dismiss, the complaint must be construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party must be accepted as true. See Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986).  A complaint does not need "detailed factual allegations." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Rather, the complaint need only assert "enough facts to state a claim for relief that is plausible on its face." Id. at 1974. "A **complaint should not be dismissed unless there is no possibility that the plaintiff can recover under the allegations of his complaint."** Madison v. Purdy, 410 F.2d 99 (5th DCA 1969) (emphasis supplied) (citations omitted).

III.   **LEGAL ANALYSIS**

   A.   **The complaint, as amended, asserts timely claims under the Florida Minimum Wage Act**

Plaintiffs' First Amended Complaint ("Complaint") alleges that Ms. Ramos left the employ of Defendants on or about June 27, 2005. Compl. ¶64. Ms. Ramos alleges that Defendants' violated the Florida Minimum Wage Act ("FMWA") by failing to post required notice and/or pay the minimum wage. See Compl. ¶ 106-7. Under the Florida Minimum Wage Act (Fla. Stat. § 448.110), the statute of limitations for bringing a claim

under the FMWA is four (4) years. See Fla. Stat. § 95.11(3)(q), setting out the four (4) year statute of limitations for "[a]n action alleging a violation, other than a willful violation, of § 448.110." As well, there is a five (5) year statute of limitations if the allegations of the violation are willful. See Fla. Stat. § 95.11(2)(d). Moreover, Plaintiffs allege that Defendants violation was willful, and through their allegations would be entitled to protection of the five (5) years statute of limitations. See Compl. ¶ 106-7.

Nonetheless, Defendants have entirely misstated the applicable statute of limitations in their Motion at page 4 and 14 as being two (2) years, when in fact the statute of limitations is four (4) years, and thus Plaintiff RAMOS' FMWA claim regardless of whether it would have been alleged as willful or not, should proceed accordingly, and Defendant's Motion as to Count II should be denied.

**B.**    **Plaintiffs satisfactorily allege that Defendants engaged in fraud**

Plaintiffs state a claim for fraud because they adequately allege that Defendants misrepresented several existing facts. Defendants had superior knowledge of those facts and made promises of future action with no intent to perform. Furthermore, the economic loss doctrine does not apply here.

The elements of fraud are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985) (quoting Huffstetler v. Our Home Life Ins. Co., 65 So. 1 (1914)).

Fraud claims may be based on statements that misrepresent existing facts, when made by one with superior knowledge of those facts, or on promises of future action

4

when made with no intent to perform or with the intent not to perform. <u>See</u> <u>Mejia v.</u> <u>Jurich</u>, 781 So.2d 1175, 1177-8 (Fla. 3rd DCA 2001).

Claims of fraud generally are "a subtle thing requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud, [and] it is seldom that one can determine the presence or absence of fraud without trial. <u>Amazon v. Davidson</u>, 390 So.2d 383, 385 (Fla. Dist. Ct. App. 1980) (quoting <u>Alepgo Corp. v. Pozin</u>, 114 So.2d 645 (Fla. Dist. Ct. App. 1959). This reluctance to dismiss claims of fraud on motions for summary judgment "applies equally as well, if not better, to a motion for dismissal." <u>Ong v. Brown, Rudnick, Freed, Gesmer,</u> <u>P.A.</u>, 1994 U.S. Dist. LEXIS 4729 (M.D. Fla. Apr. 11, 1994) (refusing to dismiss a claim where plaintiff alleged a misrepresentation from defendant with superior knowledge about whether a merger had been completed).

### 1.    Defendants, having superior knowledge, misrepresented existing facts to induce Plaintiffs to accept employment

Misrepresenting existing facts in order to induce others to agree to a contract may be actionable as fraud, even when the statement takes the form of an opinion. "[W]here a statement can be viewed as coming from one with superior knowledge of the subject of the statement, such statement may constitute a statement of fact rather than opinion." <u>Baker v. United Servs. Auto. Ass'n,</u> 661 So.2d 128, 131 (Fla. 1st DCA 1995). <u>See</u> <u>also</u> <u>Amazon</u>, 390 So.2d 383 at 385 (stating that a widow inexperienced in real estate transactions sufficiently alleged fraud by describing real estate agent's assurances about the safety and profitability of an investment); <u>Vokes v. Arthur Murray,</u> <u>Inc.</u>, 212 So.2d 906 (Fla. 2nd DCA 1968) (describing as actionable the statements of dance instructors that a student would become an accomplished dancer if she

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON  •  FORT LAUDERDALE  •  MIAMI

purchased additional lessons despite knowing the student's limited ability).  A claim is sufficient where the misrepresentation from a party with superior knowledge leads the plaintiff to enter into an agreement and other elements of fraud are alleged. See Ong, 1994 U.S. Dist. LEXIS 4729.

### i.    *Defendants' fraud as to scope of employment*

Defendants told Plaintiffs that they would be responsible for childcare only, a statement of material fact made in order to cajole Plaintiffs into accepting the employment offer. Compl. ¶ 13, 30, 69.  Subsequently, the Plaintiffs were required to cook, clean, do laundry, and perform several other tasks in addition to caring for the children. Compl. ¶¶ 13, 37, 75.   Defendants had superior knowledge about the workload, additional staff, or existing plans to handle other household duties. Compl. 119-121.

### ii.    *Defendants fraudulently withheld documents*

Defendants told Plaintiffs it was necessary that they surrender their passports to Defendants in order to get a visa for Plaintiffs to travel to the United States as legally-authorized domestic workers. Compl. ¶ 18, 32, 70.  Defendants had superior knowledge of the process of obtaining visas and knew or should have known that permanent confiscation by Defendants of Plaintiffs' documents was not required or allowed, Compl. ¶119-120.

### iii.    *Defendants misrepresented that they would provide*
### *Plaintiffs with wages, medical care and other benefits*

In 2002, Defendants told Plaintiff Ramos, who they knew was diabetic, that they would provide her with medical care in order to induce her to agree to move with them to the United States. Compl. ¶ 31, 60, 69. Defendants had superior knowledge of their

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

existing capacity or plans to provide insurance or assistance in accessing healthcare in the United States.  Compl. ¶119-120.  Defendants later denied Plaintiff Ramos access to medical care, claiming that it was too expensive.  Compl. ¶ 60.  Defendants made the same promise of medical care in 2006 to Plaintiff Maco and subsequently failed to provide medical insurance or access to care. Compl. ¶ 69.

Over the course of six years employing first Plaintiff Ramos, and then Plaintiff Maco, Defendants never obtained insurance, and Defendants denied Plaintiffs assistance, information, and time off to seek medical care.  Compl. ¶¶ 53, 59, 60, 69. Defendants also promised Plaintiffs Ramos and Maco wages of $7 and $7.50, respectively, in order to induce them to accept the offer of employment.  Compl. ¶12, 33, 72. More generally, Defendants told Plaintiff Ramos that she would "do well" if she came to the United States to work for them and Plaintiff Maco that she would get "all the benefits" if she agreed to come to the United States. Compl. ¶ 31, 69. Plaintiffs allege that Defendants had no intent to fulfill their promises or a positive intent not to fulfill those promises at the time the statements were made.  Compl. ¶119-120.

Plaintiffs sufficiently allege misrepresentations of existing facts that are actionable.  These facts must be assumed true and the motion to dismiss should be denied.

### 2.    Defendants made promises with no intention of performing or with a positive intent not to perform.

Additionally, Plaintiffs' complaint alleges actionable promises of future action. Compl. ¶119-120. Promises of future action are actionable as fraud when "made without any intention of performing or with the positive intention not to perform." Palmer v. Santa Fe Healthcare Systems, Inc., 582 So. 2d 1234, 1236 (Fla. 1st DCA 1991); Williams v.

Bear Stearns & Co., 725 So. 2d 397 (Fla. 5th DCA 1998), rev. denied, 737 So. 2d 550 (Fla. 1999).

### i.   *Defendants' promise of limited duties*

Defendants told Plaintiffs that they would only be responsible for limited duties, understating the amount of work in order to induce Plaintiffs to accept employment. Compl. ¶ 13, 30, 69.   Plaintiffs allege Defendants made this statement with no intention to fulfill their promise and thus sufficiently allege fraud based on a promise of future action made with no intent to perform or with the positive intent not to perform. Compl. ¶119-120.

### ii.   *Legal employment*

Defendants promised to provide and maintain legally-authorized employment as domestic workers throughout the Plaintiffs' period of employment in order to cajole the workers to accept employment and travel to the United States.   Compl. ¶ 23. Defendants never took adequate steps to maintain Plaintiffs' status in full compliance with immigration, tax, and employment requirements. Compl. ¶69. Defendants told Plaintiff Maco that her employment continued to be authorized after a change in Defendant Hoyle's own status made that a legal impossibility. Compl. ¶85.   Plaintiffs allege that Defendants did not intend to obtain and maintain authorized employment and immigration status or positively intended not to obtain and maintain authorized employment and immigration status. Compl. ¶119-120. These facts must be assumed true and are sufficient to state a claim for fraud. The motion to dismiss should be denied.

### iv.   *Defendants confiscated Plaintiffs' documents*

8

Defendants told Plaintiffs to turn over their passports for purposes of obtaining a visa allowing Plaintiffs to travel to and work in the United States legally. Compl. ¶ 18, 32, 70.  Defendants failed to return documents to Plaintiffs after they were used for the proper purpose and refused repeated requests by Plaintiffs for the return of documents. Compl. ¶18, 43, 57, 86.  Plaintiffs allege that Defendants did not intend to return the documents or positively intended not to return the documents.  Compl. ¶ 119-20.  These facts must be assumed true and state a claim for fraud based on actionable future promises. These facts must be assumed true and the motion to dismiss should be denied.

### 3.   The economic loss rule does not apply in this case

The economic loss rule does not apply in this case because Plaintiffs allege, first, that Defendants' fraud induced Plaintiffs to enter a contract; second, a duty existed that is distinct from the contractual relationship; third, Plaintiffs suffered physical and other damages; and, finally, even economic damages alone may be awarded under a tort claim outside the product liability context.

First, Plaintiffs allege that misrepresentations about workload, pay, access to medical care, and legal status induced Plaintiffs to enter into the employment contract. Compl. ¶12, 13, 18, 23, 30, 31, 32, 33, 60, 69, 70, 72, 85. "If a fraud is perpetrated which induces someone to enter into a contract, there is a cause of action for fraud and the remedies attendant to that particular tort are available." La Pesca Grande Charters, Inc. v. Moran, 704 So.2d 710, 712 (Fla. 5th DCA 1998).   In La Pesca, a customer was induced to buy a yacht based on allegedly fraudulent statements by the seller about the condition of the boat's engines, and the court decided the economic loss rule did not

9

apply and refused to dismiss the plaintiff's claims.  See also Allen v. Stephan Co., 784 So.2d 456 (Fla. 4th DCA 2000) (stating that independent tort action for fraudulent inducement is not barred by economic loss rule).

Second, the misrepresentations alleged by Plaintiffs are "distinct and independent from the contractual relationships between the parties and, as such, are not barred by the economic loss rule." Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 209 (Fla. 3rd DCA 2003) (citing HTP, Ltd. V. Lineas Aereas Costarricenses, 685 So.2d 1238, 1240 (Fla. 1996)). Plaintiffs allege a relationship and duty that existed distinct from the contract as a result of Defendants' offer to sponsor Plaintiffs to obtain derivative domestic worker visas and the related obligations established under immigration, employment, and tax laws.  Compl. ¶ 23, 69, 85.  See Burke v. Napieracz, 674 So.2d 756, 759 (Fla. 1st DCA 1996) (refusing to bar a claim under the economic loss rule where Plaintiff alleged violation of "a duty...not to convert the [plaintiff's] social security funds…[and] a violation of a legislatively imposed duty to avoid civil theft); Susan Fixel, Inc., 842 So.2d 204 (refusing to dismiss claims based on economic loss rule where a breach of fiduciary duty is alleged); and Johnson v. Davis, 480 So.2d 625 (Fla. 1985) (asserting that misrepresentations about the condition of a home made prior to the signing of a contract constitute a breach of the duty of good faith and fair dealing distinct from contract-based obligations). This case is characterized by precisely the sort of "special situation" in which the ability of Plaintiffs "to make an informed decision is undermined by the other party's fraudulent behavior…" HTP, Ltd., 685 So.2d 1238, 1240.  The source of the duty owed to Plaintiffs arises outside the contract because "'the interest protected by fraud is society's need for true

factual statements in important human relationships, primarily commercial or business relationships.' " Id. (citing the dissent in Woodson v. Martin, 663 So.2d 1327, 1330 (Fla. 2nd DCA 1995) (Altenbernd, J., dissenting)).

Third, where physical injury or damage to other property is alleged, the economic loss rule does not bar tort claims. See AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla. 1987) (unlike this case, applying the economic loss rule only where no physical injury or damage to other property was alleged). Plaintiffs here allege that Defendants caused damages including physical and psychological injury; Defendants further created legal liabilities for Plaintiffs; and Defendants created conditions allowing for the possibility of arrest, deportation, and inadmissibility under immigration law. Compl. ¶ 125.

Finally, even where damages are "purely economic in nature," tort claims may be allowed. Moransais v. Heathman, 744 So.2d 973, 983-4 (Fla. 1999).

For all of these reasons, the economic loss rule does not apply here and plaintiffs may assert tort claims, like fraud, in addition to their contract claims. Plaintiffs have pled facts alleging all the elements of fraud which must be assumed true on a motion to dismiss. Plaintiffs have pled facts that establish that the economic loss rule does not apply. The motion to dismiss the fraud claim must be denied.

**C.    Plaintiffs adequately plead claims for human trafficking**

    **1.   Defendants have not moved to dismiss Plaintiffs' claim for forced labor under 18 U.S.C. § 1589(2)**

Plaintiffs plead a violation of 18 U.S.C. § 1589(2). Defendants do not move in their Revised Motion to Dismiss ("Defendants' Motion") to dismiss this portion of said claim. Defendants' Motion pp. 8-11.

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

## 2.  Defendants' conduct constituted the abuse or threatened abuse of legal process in violation of 18 U.S.C. § 1589(3)

Plaintiffs state a claim for the abuse or threatened abuse of legal process in violation of 18 U.S.C. § 1589(3) because Defendants obtained Plaintiffs' labor by means of improper threats of arrest, deportation, and loss of immigration status and employment authorization made throughout the course of Plaintiffs' employment. Section 1589(3) prohibits knowingly providing or obtaining the labor or services of a person by means of the abuse or threatened abuse of law or the legal process. "Abuse of legal process" includes threats of deportation.  See Catalan v. Vermillion Ranch Ltd. P'ship, No. 06-cv-01043-WYD-MJW, 2007 U.S. Dist. LEXIS 567 (D. Colo. Jan. 4, 2007) (denying defendants' motion to dismiss, where plaintiffs held temporary nonimmigrant visas to work for defendants, because plaintiffs' complaint alleged that defendants threatened deportation if plaintiffs did not continue to work on defendants' ranch).

Defendants rely on Pasamba, a case in which the Plaintiffs failed to adequately allege a violation of 18 U.S.C. 1589(3) because the employer's threats were only made after the period of employment had ended and thus, Defendants did not obtain labor based on their threats. Pasamba v. HCCA Int'l, No. CV-08-0247-PHX-NVW, 2008 WL 2562928 (D. Ariz. June 24, 2008), at *5-6. In this case, Plaintiffs allege that specific threats of arrest, deportation, and loss of immigration status and employment authorization were made throughout the period of employment in order to coerce Plaintiffs to stay. Compl. ¶27, 44, 87.

Defendants also argue that their threats were "truthful" because Defendants had obtained "appropriate visas so the women could work as nannies and housekeepers in the U.S." Motion, pp. 10-11. Plaintiffs state that in fact Defendants did not maintain

appropriate visas or work authorization, and thus, did not make truthful statements about either Plaintiffs' status while employed by the Defendants or the consequences for their legal status of escaping, but rather made untruthful statements intended to coerce Plaintiffs' continued labor. Compl. ¶ 23, 69, 85.

Defendants rely on <u>Barrett</u>, a fraud and breach of contract case in which the employee of a professional group sued when his employer tried to "force" him to move to a different town in Georgia using the "threat" of discharge. <u>Barrett v. Independent Order of Foresters</u>, 625 F.2d 73, 74 (5th Cir. Ga. 1980).  The possibility that an individual might lose a job if they choose not to agree to a lawful employer demand is significantly different than Plaintiffs' situation, in which employers untruthfully asserted that Plaintiffs had the protection of legal status so long as they stayed and threatened that Plaintiffs would be subject to arrest, deportation, and losing "everything" if they left. Compl. ¶17, 22, 23, 27, 44, 69, 85, 87. Defendants' reliance on <u>Kory</u> is also misplaced. There, a probationary public employee chose to resign when told by a supervisor she was about to be fired, but then argued the resignation was obtained by duress when it turned out her supervisor could not have fired her absent authorization from another official. <u>Miami v. Kory</u>, 394 So.2d 494 (Fla. 3rd DCA 1981). Defendants here did not seek to end the employment relationship, having fulfilled their legal obligations, but rather sought to extend the employment relationship and extract Plaintiffs' labor using threats and intimidation despite having failed to fulfill their obligations.

Defendants' threats went well beyond the range of "legitimate warnings." When Defendants made threats to encourage law enforcement and immigration officials to pursue Plaintiffs if they ever escaped, or threats that Plaintiffs would "lose everything",

the threats do much more than warn of "adverse but legitimate consequences." <u>See</u> <u>United States v. Bradley</u>, 390 F.3d 145, 151 (1st Cir. 2004). The <u>Bradley</u> court suggested that an employer's refusal to pay the plane ticket home of an employee who left a contract early might constitute an "adverse but legitimate consequence" of an employee's early departure, depending on the contract and specific facts of a case.  <u>Id.</u> Threats of "serious legal consequences, i.e., deportation for having violated the immigration laws of the United States," however, have been found to be improper and "clearly fall within the concept and definition of 'abuse of legal process' since the alleged objective for same was to intimidate and coerce the workers into 'forced labor.'" <u>United States v. Garcia</u>, 2003 U.S. Dist. LEXIS 22088 (W.D.N.Y. Dec. 2, 2003).

In addition, Defendants violated 18 U.S.C. § 1589(3) by withholding Plaintiffs' documents. In <u>United States v. Sabhnani</u>, the court noted that the employer of a domestic servant could be convicted of document servitude for intentionally concealing, removing, confiscating, or possessing the domestic worker's passport in the course of obtaining forced labor and, thus, such passport retention likely constitutes "abuse of the legal process." <u>United States v. Sabhnani</u>, 539 F. Supp. 2d 617, 629 (E.D.N.Y. 2008). <u>See</u> <u>also</u> <u>United States v. Chang</u>, 237 Fed. Appx. 985, 987-88 (5th Cir. 2007) (stating that Defendant who held the victims' passports pleaded guilty to one count of forced labor under § 1589).  Thus, Plaintiffs allege that Defendants obtained Plaintiffs' labor by means of improper threats of arrest, deportation, and loss of immigration status and employment authorization.  These allegations state a claim for the abuse or threatened abuse of legal process in violation of 18 U.S.C. § 1589(3).  These facts must be assumed true and the motion to dismiss this claim should be denied.

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

### 3.  Defendants trafficked Plaintiffs by subjecting them to involuntary servitude and forced labor in violation of 18 U.S.C. § 1590

Plaintiffs state a claim for trafficking with respect to involuntary servitude and forced labor where Plaintiffs allege that Defendants improperly recruited, harbored, transported, and obtained Plaintiffs' services by means of threats of serious harm in violation of 18 U.S.C. § 1590.

Defendants' motion to dismiss this claim relies entirely on pointing out that Plaintiffs do not allege Plaintiffs were completely physically restrained. Defendants' Motion pp. 11-12. Although physical restraint may be a factor which can support a trafficking claim, trafficking victims need not allege physical restraint in order to state a trafficking claim. In Bradley, the court rejected Defendants' argument that the jury should be instructed to deny the victims' claim unless there was no objective "opportunity to flee." Instead, the court approved jury instructions stating the government "need not prove physical restraint; such as, the use of chains, barbed wire, or locked doors, in order to establish the offense of forced labor. The fact that [victims] may have had an opportunity to flee is not determinative of the question of forced labor if either or both of the defendants placed [victims] in such fear or circumstances that [either victim] did not reasonably believe he could leave." U.S. v. Bradley, 390 F.3d 145, 153 (1st Cir. 2004), judgment vacated on other grounds, 545 U.S. 1102 (2005). Allegations of nonviolent coercion are sufficient to establish a claim. See H.R. Conf. Rep. No. 106-939 at 101 (2000), 2000 SL 1479163 (Oct. 5, 2000) (explaining that the TVPRA is "intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion," where serious harm "refers to a broad array of harms,

15

including both physical and nonphysical, and the provisions "are intended to be construed with respect to the individual circumstances of victims...")

Plaintiffs have alleged facts supporting a claim of involuntary servitude and forced labor because Defendants knowingly retained control over Plaintiffs' passports and immigration documents, withheld Plaintiffs' wages, food and medical care, required Plaintiffs to be on-call 24 hours a day, and limited Plaintiffs' contact with other people. Compl. ¶¶ 14, 15, 17, 18-23, 26, 43, 44, 45, 60, 61, 86-90.

Specifically, the threat of being made homeless is one which courts have recognized as a type of "serious harm". See Garcia v. Audubon Cmtys. Mgmt., LLC, 2008 U.S. Dist. LEXIS 31221 (E.D. La. Apr. 15, 2008). Moreover, the Plaintiffs' "special vulnerabilities" are appropriate to consider in relation to a threat of serious harm. See U.S. v. Bradley, 390 F.3d 145, 153. Here, the diabetes from which Defendants knew Plaintiff Ramos suffered made her more vulnerable, as did the derivative immigrant status both Plaintiffs originally received. Compl. ¶31, 44, 45, 85, 87.  Congress, in passing the TVPRA, spoke specifically to the situation of domestic workers controlled through nonviolent psychological and legal coercion rather than complete physical restraint, noting the law should address "cases in which individuals have been trafficked into domestic service, an increasingly common occurrence, not only where such victims are kept in service through overt beatings, but also where the traffickers use more subtle means designed to cause their victims to believe that serious harm will result to themselves or others if they leave…" H.R. Conf. Rep. No. 106-939 at 101 (2000), 2000 SL 1479163 (Oct. 5, 2000).

16

Plaintiffs have stated a claim for trafficking with respect to involuntary servitude and forced labor because Plaintiffs allege that Defendants improperly recruited, harbored, transported, and obtained Plaintiffs' services by means of threats of serious harm in violation of 18 U.S.C. § 1590.

III.   **CONCLUSION**

For the reasons set out above, Plaintiffs Alejandra Ramos and Onelia Maco respectfully request that the court deny Defendants' motion to dismiss counts II, IV and V of Plaintiff's First Amended Complaint in its entirety.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
Counsel for Plaintiffs
7251 West Palmetto Park Road
Suite 206
Boca Raton, Florida 33433
Telephone:  561.361.8010
Facsimile:   561.361.8086


BY:   Erika Deutsch Rotbart s/.
        Erika Deutsch Rotbart, Esq.
        Florida Bar No.: 0047686

FLORIDA IMMIGRANT ADVOCACY CENTER
Counsel for Plaintiffs
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137
Telephone: 305.573.1106 ext. 1020
Facsimile: 305.576.6273

BY: Mary Gundrum s/.
      Mary Gundrum, Esq.
      Florida Bar No.: 0937339

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on **September 2, 2008**, the foregoing document was electronically filed with the Clerk of the court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

DEUTSCH ROTBART & ASSOCIATES, P.A.
Counsel for Plaintiffs


BY:   <u>Erika Deutsch Rotbart s/.   </u>
       Erika Deutsch Rotbart, Esq.
       Florida Bar No.: 0047686

FLORIDA IMMIGRANT ADVOCACY CENTER
Counsel for Plaintiffs


BY: <u>Mary Gundrum s/.</u>
      Mary Gundrum, Esq.
      Florida Bar No.: 0937339

### <u>SERVICE LIST</u>
*ALEJANDRA RAMOS and MARIA ONELIA CASTRO*
*v. JAVIER HOYLE and PATRICIAL PERALES*
*CASE NO:  08-CV-21809 MARTINEZ/BROWN*

Stephen James Binhak
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717
E-mail: binhaks@gtlaw.com


Erika Deutsch Rotbart, Esq.
Deutsch Rotbart & Associates, P.A.
7251 West Palmetto Park Road
Suite 206
Boca Raton, FL 33433
Telephone:  561.361.8010
Facsimile:   561.361.8086
E-mail:  edrotbart@comcast.net

FLORIDA IMMIGRANT ADVOCACY
CENTER
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137
Telephone: 305.573.1106 ext. 1020
Facsimile: 305.576.6273
E-mail:  mgundrum@fiacfla.org

18