UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRA RAMOS and )   CASE NO.: 08-CV-21809-
MARIA ONELIA MACO CASTRO, )   MARTINEZ/BROWN
)
Plaintiffs, )
)
v. )
)
JAVIER HOYLE and PATRICIA PERALES, )
)
Defendants. )

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS II, IV, AND V FROM PLAINTIFFS' FIRST AMENDED COMPLAINT**

Javier Hoyle and Patricia Perales file this Reply in Support of their Motion to Dismiss Counts II, IV, and V from Alejandra Ramos' and Maria Onelia Maco Castro's First Amended Complaint.

Ms. Ramos and Ms. Maco voluntarily left their homes in Peru to work as domestic employees for Mr. and Mrs. Hoyle in Key Biscayne, Florida. By coming to the U.S., these woman sought higher wages and a better standard of living. Mr. and Mrs. Hoyle sought child care and help with their housekeeping. Both women executed employment contracts and received a weekly salary, room and board, and fully paid access to an immigration lawyer so they would have lawful status to live and work in the U.S.

Ms. Ramos and Ms. Maco claim Mr. and Mrs. Pareles fraudulently induced them into taking the jobs (by lying about the wages and benefits) and then defrauded the women by failing to provide the promised wages and benefits. The women also claim Mr. and Mrs. Pareles violated the Trafficking Victims Protection Reauthorization Act ("TVPRA").

These claims fail. The fraud count is missing key elements of a fraud claim, and the economic loss rule is a bar. The TVPRA claim is also missing key elements. As a result, the Court should grant the Motion to Dismiss on these counts.

In light of the Response, Mr. and Mrs. Perales withdraw their Motion to Dismiss Count II only.

## I. Argument

As a general matter, this Court should dismiss the claims for fraud and violation of the TVPRA because these Counts are filled with labels and conclusions, "and a formulaic recitation of the elements of a cause of action will not [withstand dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)]." *Lopez v. Garcia-Montes*, No.08-21656-CIV, 2008 WL 2782738, at *2 (S.D. Fla. July 16, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)).

The Amended Complaint simply does not provide sufficient factual support for its general allegations.

### A.   The Fraud Count Fails.

Ms. Ramos and Ms. Maco claim the Court should sustain their fraud claim because: (1) Mr. and Mrs. Hoyle possessed superior knowledge and misrepresented existing facts to induce them to accept employment, (2) Mr. and Mrs. Hoyle made promises with no intention of performing or with a positive intent not to perform, and (3) the economic loss rule does not apply.

One way they try to save the fraud claim is to inject various allegations into the Complaint. Despite this attempt, Ms. Ramos' and Ms. Maco's fraud claim is fatally flawed because they failed to plead fraud with the particularity that *Lopez v. Garcia-Montes*, 2008 WL 2782738 and *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2008) require.

1.  Mr. and Mrs. Hoyle Do Not Have Superior Knowledge.

Ms. Ramos and Ms. Maco claim that Mr. and Mrs. Hoyle had "superior knowledge" regarding the employment merely because they were employers. On this basis, they claim the alleged misrepresentations make a sufficient claim.

The law says otherwise.

*Miller v. Yokohama Tire Corp.*, 358 F.3d 616 (9th Cir. 2004) demonstrates this point. Miller claimed his employer falsely told him that he was not eligible for overtime pay because he was a salaried employee. Miller alleged the employer's misrepresentations constituted fraud because the employer had "superior knowledge" of the employment. *Id.* at 621.

The court rejected this claim. The Ninth Circuit explained an employee must allege more than a general employee-employer relationship to support a fraud claim based on "superior knowledge." The Court noted that an employee must identify specific facts to justify such a claim. The Court wrote that Miller "did not allege facts to support superior knowledge, nor are we willing to impute hypothetical knowledge on the basis of the facts alleged." *Id.* at 621. *C.f. Bowman v. City of Indianapolis*, 133 F.3d 513, 519 (7th Cir. 1998) (affirming summary judgment on a fraud claim in favor of a City because no one at the City claimed superior knowledge of the Fair Labor Standards Act which could have induced reliance by the employee).

Ms. Ramos and Ms. Maco have the same problem.

The women do not allege that Mr. and Mrs. Hoyle had superior knowledge of U.S. immigration laws, or that Mr. and Mrs. Hoyle are even U.S. citizens who would be familiar with the immigration laws of this country. In fact, the women fail to identify any specific knowledge that Mr. and Mrs. Pareles have that the woman lack.

Instead, Ms. Ramos and Ms. Maco simply allege that Mr. and Mrs. Hoyle were their employers and therefore had "superior knowledge." *See* Response at pages 5-7. *Miller* clearly reveals that conclusory pleading is not sufficient in this type of fraud claim.

The Court should dismiss the women's fraud count.

2. <u>Ms. Ramos and Ms. Maco Do Not Sufficiently Allege Intention</u>.

Ms Ramos and Ms. Maco also claim Mr. and Mrs. Hoyle made promises without intending to perform. This claim fails to meet the pleading standard set forth in *Lopez v. Garcia-Montes*, 2008 WL 2782738 or *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955.

According to Ms. Ramos and Ms. Maco, Mr. and Mrs. Hoyle "knowingly made materially false and deceptive statements and representations about existing facts and knowingly made materially false and deceptive statements and representations about future actions with no intent to fulfill those promises" Complaint at ¶ 119.

At the same time, Ms. Ramos and Ms. Maco do not identify a single specific act to demonstrate that Mr. and Mrs. Hoyle intended to break their promises. Rather, the women simply assert that Mr. and Mrs. Hoyle failed "to disclose material facts to Plaintiffs… regarding the nature, terms and conditions of employment and the procedures for maintaining of immigration status and employment authorization, as well as providing tax documents and making required tax payments." Complaint at ¶ 120.

Even assuming this assertion is true, it does not reveal an intent to break promises.

Moreover, to bolster this claim, Ms. Ramos and Ms. Maco add allegations that do not appear in the Amended Complaint. For example, in their response, the women argue that they "allege that Defendants did not intend to return the documents [such as their passports] or

4

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

positively intended not to return the documents." Response at page 9. The Amended Complaint does not contain this allegation.

In addition, even if the Amended Complaint contained this claim, the assertion does not support the women's contention that Mr. and Mrs. Hoyle did not intend to comply with the contracts. Holding another person's passport has nothing to do with failing to pay wages or maintaining lawful immigration status. To be sure, among alien families who sponsor alien employees in the U.S., it is a common practice for the employer family to hold the employee's immigrations documents.

For all of these reasons, Ms. Ramos and Ms. Maco have failed to sufficiently allege that Mr. and Mrs. Hoyle made promises with no intention of performing them.

3. <u>The Economic Loss Rule Bars the Fraud Claim</u>.

Ms. Ramos and Ms. Maco also claim the economic loss rule does apply to their fraud claim. Again, they are wrong.

First, as noted above, Ms. Ramos' and Ms. Maco's assertions do not sufficiently allege that Mr. and Mrs. Hoyle said anything which actually induced the women to enter into the employment contracts. Along these lines, the women fail to claim that Mr. and Mrs. Hoyle's statements caused them to enter into the employment contracts.

Second, the alleged misrepresentations are not distinct and independent from the contractual relationships between the parties. Ms. Ramos and Ms. Maco claim that Mr. and Mrs. Hoyle failed to pay them and provide benefits in violation of the employment agreement. Specifically, Mr. and Mrs. Hoyle agreed to pay, provide room and board, and obtain worker visas for Ms. Ramos and Ms. Maco. In exchange, each woman agreed to work for the family. The economic loss rule bars fraud claims in circumstances like these where "the alleged duty

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

breached is derived from the contractual relationship. *Excess Risk Underwriters, Inc. v. Lafayette Insurance Co.*, 208 F. Supp 2d 1295, 1299-1300 (S.D. Fla. 2000)

Third, in this instance, the women again attempt to bolster their complaint by raising allegations in their brief which are not in the Amended Complaint. The Response argues the economic loss rule does not apply because there is "physical injury or damage to other property." Response at page 11, citing to *AFM Corp. v. S. Bell Tel. & Tel., Co.*, 515 So.2d 180 (Fla. 1987).

By contrast, paragraph 125 of the Amended Complaint (which is where the women direct the Court to find this allegation) does not identify any physical injury or property damage. It says:

> In reasonable reliance on Defendants' false representations regarding immigration status, employment authorization, and employment terms and conditions, Plaintiffs RAMOS and MACO were denied medical treatment, legal immigration status, employment authorization, and tax payments on their behalf and suffered physical and emotional injury, incurred legal liabilities and harm to their present and future immigration and employment status, and other injuries

The remainder of the Amended Complaint similarly fails to allege physical injuries or property damage. For this reason, these allegations do not meet the pleading standard explained in *Lopez v. Garcia-Montes* or *Bell Atlantic Corp. v. Twombly*.

For these reasons, the economic loss rule bars Ms. Ramos' and Ms. Maco's claim for fraud. This Court should dismiss the fraud claim.

C.     The TVPRA Claim Fails.

Ms. Ramos and Ms. Maco have also failed to state a claim under the TVPRA. In addition, their attempts to use their brief to supplement their insufficient allegations in the Amended Complaint is inadequate.

1. Plaintiffs Have Not Alleged a Violation of 18 U.S.C. § 1589(2).

Ms. Ramos and Ms. Maco attempt to state a claim under 18 U.S.C. § 1589(2) by simply reciting the statute's language. They allege Mr. and Mrs. Hoyle violated 18 U.S.C. § 1589(2) "by knowingly attempting and obtaining the labor and services of Plaintiffs using a scheme, plan or pattern, which in the totality of the circumstances, was intended to coerce Plaintiffs to believe they would suffer serious harm if they were to leave the employ of Defendants." Complaint at ¶ 130.

*Lopez v. Garcia-Montes* and *Bell Atlantic Corp. v. Twombly* clearly indicate that this type of conclusory allegation fails to state a claim. A plaintiff must provide a factual basis for her allegations. Here, the women have not identified the conduct that constituted the scheme or plan to coerce the women into maintain employment.

2. Plaintiffs Have Not Alleged a Violation of 18 U.S.C. § 1589(3).

Ms. Ramos and Ms. Maco allege that Mr. and Mrs. Hoyle's alleged threats went well beyond the range of "legitimate warnings." Response at pages 13-14.

To support this claim, the women rely on *United States v. Bradley*, 390 F.3d 145 (1st Cir. 2004) and *United States v. Garcia*, No. 02-CR-110S-01, 2003 WL 22938040 (W.D.N.Y. Dec. 2, 2003). These cases are fundamentally different from the allegations in this case.

In *Bradley*, the defendant told three Jamaican employees that "in the previous year a worker had run away-and that [the defendant] would hire someone in Jamaica to 'destroy' that man." 390 F.3d at 149. The employees "were both frightened by this statement, believing that murder for hire was quite feasible in Jamaica." *Id.*

In *Garcia*, the defendants "'failed or refused to pay [the employees] their wages' as well as 'threatened them with physical violence and with being caught (sic) and deported by the

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Immigration and Naturalization Service (INS) if they attempted to leave... and 'on occasion, the defendants refused to provide the workers ... with any food. The defendants also told the workers that, if they tried to escape, they would be hunted down and returned to the defendants.'" 2003 WL 22938040 at *1.

The Amended Complaint does not allege that Mr. and Mrs. Hoyle threatened either woman with physical harm (as in *Bradley*), and it does not allege that Mr. and Mrs. Hoyle threatened to hunt the women down if they escaped (as in *Garcia*). By contrast, according to Ms. Ramos and Ms. Maco, Mr. and Mrs. Pareles told each woman that if she left her job, she would lose her immigration status in the U.S., and could be arrested and deported. Assuming this allegation is true, it is merely a statement of true fact, not a threat.

Ms. Ramos and Ms. Maco also incorrectly rely on *United States v. Sabhnani*, 539 F. Supp.2d 617 (E.D.N.Y. 2008) and *United States v. Chang*, 237 Fed. Appx. 985 (5th Cir. 2007). According to the women, these cases indicate that it is a violation of 18 U.S.C. § 1589(3) to hold an employee's passport and related documents.

Once again, these cases are fundamentally different than this situation.

In *Sabhnani*, the defendants held two Indonesian workers as domestic servants. 539 F. Supp.2d at 620. These two woman worked from four a.m. through midnight seven days a week, slept on the floor of the kitchen, had no regular days off, had no contact with outsiders, did not have enough food and were forced to eat from the trash, were forced to wear rages, were beaten and physically abused, and were told that if they tried to escape the police would shoot them. *Id.* at 620-621.

In *Chang*, the defendant was involved in a smuggling network which would illegally smuggle women into the U.S. from South Korea. *See* 237 Fed. Appx. at 986-987. Once these

8

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

woman reached where the defendant lived, the defendant required the women to live in his house and work at his club. *Id.* The women needed defendant's permission to leave the house, which was equipped with a video surveillance system to monitor their entries and departures. *Id.* Overall, the defendant organized the forced labor of between 50 to 60 woman. *Id.*

Among other things, the Amended Complaint concedes that Ms. Ramos returned twice to her home country of Peru with Mr. and Mrs. Pareles (in December 2002 and December 2003). The Amended Complaint further concedes that Ms. Ramos was allowed to visit her family during these trips, and then returned to the U.S. Similarly, the Amended Complaint alleges that Ms. Maco lived alone in an apartment in luxury development in Key Biscayne for a month in 2006 and another month in 2007.

These allegations are wholly inconsistent with the notion that either woman was held captive beyond her will. In addition, there is no suggestion that either woman suffered beatings or any other torture or forced labor. Moreover, the Amended Complaint concedes that Ms. Ramos left her job without any consequence from Mr. and Mrs. Hoyle.

Under the circumstances, neither woman has made a sufficient claim for a violation under 18 U.S.C. § 1589(3).

### 3. Plaintiffs Have Not Alleged a Violation of 18 U.S.C. § 1590.

Ms. Ramos and Ms. Maco also fail to state a claim for involuntary servitude. The women allege that Mr. and Mrs. Hoyle improperly recruited, harbored, transported, and obtained their services by means of threats of serious harm in violation of 18 U.S.C. § 1590.

Citing *Bradley*, Ms. Ramos and Ms. Maco claim they do not need to allege physical restraint to state a trafficking claim. Rather, they claim it is sufficient to allege that they were "placed in such fear or circumstances that either victim did not reasonably believe he could

leave." Response at page 15. Even assuming this statement of law is correct, the Amended Complaint does not allege such a circumstances.

The Amended Complaint indicates that both women had numerous opportunities to leave the Hoyle residence and/or report their situation to the police. The Amended Complaint indicates each woman had Sundays off, was left alone while the Hoyle's travelled out of town, visited a doctor, went home to Peru for several weeks, went to church, and frequented a nearby park (which incidentally is adjacent to the Key Biscayne Police Department and Fire Department). Complaint at ¶¶ 48, 51, 52, 57, 61, 84, and 88.

These allegations reveal the frivolity of this claim. The fact is, each woman interacted with numerous individuals outside of the Hoyle home, and each woman had ample opportunity to leave the Hoyle home. It is also a fact that both women continually chose to return to the Hoyle home to work.

Moreover, even if Mr. and Mrs. Hoyle "retained control over Plaintiffs' passports and immigration documents, withheld Plaintiffs' wages, food and medical care, required Plaintiffs to be on-call 24 hours a day, and limited Plaintiffs' contact with other people (Response at page 16)," this conduct would not create involuntary servitude. These claims have nothing to do with whether or not either woman believed she had the freedom to leave.

Finally, the women argue in their Response that Mr. and Mrs. Hoyle threatened to make them homeless, and that becoming homeless would be a "serious harm" under the statute. *See* Response at page 16. Once again, this claim does not appear in the Amended Complaint.

Accordingly, Plaintiffs failed to allege that Mr. and Mrs. Hoyle violated 18 U.S.C. § 1590.

10

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

## II. Conclusion

For the reasons set forth above, Defendants Javier Hoyle and Patricia Perales respectfully request that this Court enter an order dismissing Counts IV and V from Plaintiffs' First Amended Complaint, and award such other relief as the Court deems just and proper.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Counsel for Defendants*
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

BY: /s/ Stephen James Binhak
    STEPHEN JAMES BINHAK
    Florida Bar No. 0736491
    binhaks@gtlaw.com
    SANDRA J. MILLOR
    Florida Bar No. 0013742
    millors@gtlaw.com

11

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

*CASE NO. 08-CV-21809-MARTINEZ/BROWN*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2008, I electronically filed the foregoing Defendants' Reply in Support of Their Motion to Dismiss Counts II, IV, and V from Plaintiffs' First Amended Complaint with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                     /s/ Stephen James Binhak
                     STEPHEN JAMES BINHAK

### Service List

**Ericka Deutsch Rotbart, Esq.**
DEUTSCH ROTBART & ASSOCIATES, P.A.
7251 West Palmetto Park Road
Suite 206
Boca Raton, Florida 33433

**Mary Gundrum, Esq.**
FLORIDA IMMIGRANT ADVOCACY CENTER
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137

12

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com