UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |  |
|---|---|---|
| ALEJANDRA RAMOS and | ) | |
| MARIA ONELIA MACO CASTRO, | ) | CASE NO.:  08-CV-21809- |
| | ) | MARTINEZ/BROWN |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAVIER HOYLE and PATRICIA PERALES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' ANSWER, DEFENSES, AND AFFIRMATIVE DEFENSES TO
PLAINTIFFS' FIRST AMENDED COMPLAINT, AND COUNTERCLAIMS**

Javier Hoyle and Patricia Parales submit their Answer, Defenses, and Affirmative Defenses to Alejandra Ramos' and Maria Onelia Maco Castro's First Amended Complaint ("Complaint") as follows:

**<u>INTRODUCTION</u>**

1.      Defendants admit that they are husband and wife.  Defendants further admit that this purports to be an action for damages against them, for violation of the Fair Labor Standards Act, the Florida Minimum Wage Act, Breach of Contract, Fraud, and violation of the Trafficking Victims Protection Reauthorization Act.  Defendants deny the remaining allegations contained in Paragraph 1 of the Complaint.

2.      Defendants admit that they employed Ramos as part time housekeepers and part time childcare provider in Peru, Puerto Rico, and Key Biscayne, Florida from 2002 through 2005.  Defendants admit that they employed Maco as part time housekeepers and part time childcare provider in Key Biscayne, Florida from 2006 through 2008.

3.     Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4.     Defendants deny the allegations contained in Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.     Defendants admits that this purports to be an action for damages brought pursuant to federal laws and the laws of the state of Florida.

6.     Defendants admit that venue is proper in Miami-Dade County.  Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint.

7.     Defendants admit that venue is proper in Miami-Dade County.  Defendants deny the remaining allegations contained in Paragraph 7 of the Complaint.

8.     Defendants deny the allegations contained in Paragraph 8 of the Complaint.

## PARTIES

9.     Defendants admit the allegations contained in Paragraph 9 of the Complaint.

10.     Defendants admit the allegations contained in Paragraph 10 of the Complaint.

## GENERAL ALLEGATIONS

11.     Defendants admit that Plaintiffs were part-time child care providers and part-time housekeepers.  Defendants deny the remaining allegations contained in Paragraph 11 of the Complaint.

12.     Defendants admit that Plaintiffs each signed an employment contract with them, and that the contracts speak for themselves.  Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13.     Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14.     Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.     Defendants admit that they did not post notices about Plaintiffs' employment rights but deny that they were required to do so.

17.     Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     Defendants admit that Mr. Hoyle told Plaintiffs prior to the signing of the employment contracts that he needed their passports to secure visas from the United States Embassy.  Defendants admit that they maintained control of Plaintiffs' passports and visas at various times during Plaintiffs' employment but deny that Plaintiffs were ever denied access to their passports or visas.  Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants admit that they promised Plaintiffs prior to and during their employment that Defendants would maintain Plaintiffs' legal status and work authorization. Defendants deny the remaining allegations contained in Paragraph 22 of the Complaint.

23.     Defendants admit that they hired, met with, and instructed an attorney on how to handle immigration and employment matters pertaining to Plaintiffs.   Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations contained in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations contained in Paragraph 27 of the Complaint.

*CASE NO. 08-CV-21809-MARTINEZ/BROWN*

## PLAINTIFF RAMOS STATEMENT OF FACTS

28.     Defendants admit the allegations contained in Paragraph 28 of the Complaint.

29.     Defendants admit that as part of Ms. Ramos' job duties and responsibilities, Ms. Ramos occasionally prepared meals for the Hoyle family.   Defendants deny the remaining allegations contained in Paragraph 29 of the Complaint.

30.     Defendants admit that part of Ms. Ramos' job duties and responsibilities was to care for Defendants' son.  Defendants deny the remaining allegations contained in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations contained in Paragraph 31 of the Complaint.

32.     Defendants admit that they assisted Ms. Ramos in obtaining a passport to travel with Defendants to the U.S.  Defendants further admit that prior to signing the employment contract, Mr. Hoyle told Ms. Ramos that he needed her passport in order to secure a visa for her. Defendants deny the remaining allegations contained in Paragraph 32 of the Complaint.

33.     Defendants admit that Ms. Ramos signed an employment contract, and that the contract speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 33 of the Complaint.

34.     Defendants admit that they gave Ms. Ramos an opportunity to sign the contract. Defendants deny the remaining allegations contained in Paragraph 34 of the Complaint.

35.     Defendants admit the allegations contained in Paragraph 35 of the Complaint.

36.     Defendants admit that they moved to Puerto Rico, but deny the remaining allegations contained in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations contained in Paragraph 38 of the Complaint.

39.     Defendants admit the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants admit that Ms. Ramos was assigned her own private bathroom which was located in the terrace next to the living room.  Defendants deny the remaining allegations contained in Paragraph 40 of the Complaint.

41.     Defendants admit that Ms. Ramos was assigned her own private bathroom which was located in the terrace next to the living room.  Defendants deny the remaining allegations contained in Paragraph 441 of the Complaint.

42.     Defendants deny the allegations contained in Paragraph 42 of the Complaint.

43.     Defendants admit that they kept Ms. Ramos' passport and visa but deny that Ms. Ramos ever requested these documents.

44.     Defendants admit that they told Ms. Ramos that she had legal immigration status as long as she remained in Defendants' employment.  Defendants deny the remaining allegations contained in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46.     Defendants deny the allegations contained in Paragraph 46 of the Complaint.

47.     Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations contained in Paragraph 49 of the Complaint.

50.     Defendants admit that Ms. Ramos did not receive health insurance but deny that they were required to provide it to Ms. Ramos.  Defendants deny the remaining allegations contained in Paragraph 50 of the Complaint.

51.      Defendants admit that on several occasions in 2002 and 2003 Defendants went out of town and left Ms. Ramos in the house.  Defendants deny the remaining allegations

contained in Paragraph 51 of the Complaint.

52.     Defendants are without knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint, and therefore, deny same and demand strict proof.

53.     Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.     Defendants admit that on or about April 2004, they moved to an apartment in Key Biscayne, Florida.  Defendants deny the remaining allegations contained in Paragraph 55 of the Complaint.

56.     Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57.     Defendants admit that Ms. Ramos traveled to Peru with the Defendants on several occasions.  Defendants deny the remaining allegations contained in Paragraph 57 of the Complaint.

58.     Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of the Complaint.

60.     Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63.     Defendants deny the allegations contained in Paragraph 63 of the Complaint.

64.     Defendants admit that Ms. Ramos left her employment with Defendants. Defendants deny the remaining allegations contained in Paragraph 64 of the Complaint.

65.     Defendants admit that Ms. Ramos wrote a letter to Defendants, and that the letter speaks for itself.  Defendants deny the remaining allegations in Paragraph 65 of the Complaint.

66.     Defendants admit the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants are without knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 67 of the Complaint, and therefore, deny same and demand strict proof.

68.     Defendants are without knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 68 of the Complaint, and therefore, deny same and demand strict proof.

## PLAINTIFF MACO'S STATEMENT OF FACTS

69.     Defendants admit that on or about April 3, 2006 Mr. Hoyle contacted Ms. Maco at her sister's house in Peru regarding future employment with the Defendants.  Defendants deny the remaining allegations contained in Paragraph 69 of the Complaint.

70.     Defendants admit the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants admit the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants admit that at the U.S. Embassy, Mr. Hoyle presented Ms. Maco with an employment contract, and that the contract speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 72 of the Complaint.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74.     Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75.     Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.     Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.     Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.     Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.     Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84.     Defendants admit that they returned to Peru for one month in 2006 and 2007 and that they left Ms. Maco in their apartment in Key Biscayne.  Defendants deny the remaining allegations contained in Paragraph 84 of the Complaint.

85.     Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     Defendants admit that they kept Ms. Maco's passport and visa at certain times. Defendants deny the remaining allegations contained in Paragraph 86 of the Complaint.

87.     Defendants admit that they told Ms. Maco that she had legal immigration status as long as she remained in Defendants' employment.  Defendants deny the remaining allegations contained in Paragraph 87 of the Complaint.

88.     Defendants admit that Ms. Perales accompanied Ms. Maco to a nearby park where children and nannies congregated.  Defendants deny the remaining allegations contained in Paragraph 88 of the Complaint.

89.     Defendants admit that they told Ms. Maco that she would lose her legal immigration status if she left Defendants' employment.   Defendants deny the remaining allegations contained in Paragraph 89 of the Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of the Complaint.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

91.     Defendants realleage and reincorporate their answers to Paragraphs 1 through 92 of

the Complaint.

92.      Defendants admit that the Fair Labor Standards Act ("FLSA") is a valid law of the United States of America, and that Section 203 is a part of that law.  Defendants further state that FLSA speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 92 of the Complaint.

93.      Defendants admit that FLSA is a valid law of the United States of America, and that Section 203 is a part of that law.  Defendants further state that FLSA speaks for itself. Defendants deny the remaining allegations contained in Paragraph 93 of the Complaint.

94.      Defendants admit that FLSA is a valid law of the United States of America, and that Section 203 is a part of that law.  Defendants further state that FLSA speaks for itself. Defendants deny the remaining allegations contained in Paragraph 94 of the Complaint.

95.      Defendants admit that FLSA is a valid law of the United States of America, and that Section 206 is a part of that law.  Defendants further state that FLSA speaks for itself. Defendants deny the remaining allegations contained in Paragraph 95 of the Complaint.

96.      Defendants admit that FLSA is a valid law of the United States of America, and that Section 206 is a part of that law.  Defendants further state that FLSA speaks for itself. Defendants deny the remaining allegations contained in Paragraph 96 of the Complaint.

97.      Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.      Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.      Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.    Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.    Defendants deny the allegations contained in Paragraph 101 of the Complaint.

## COUNT II

### FLORIDA MINIMUM WAGE ACT

102.    Defendants reallage and reincorporate their answers to Paragraphs 1 through 92 of the Complaint.

103.    Defendants admit that the Florida Minimum Wage Act ("FMWA") is a valid law of Florida, and that Section 448 is a part of that law.  Defendants further state that FMWA speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 103 of the Complaint.

104.    Defendants admit that FMWA is a valid law of Florida, and that Section 448 is a part of that law.  Defendants further state that FMWA speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 104 of the Complaint.

105.    Defendants admit that FMWA is a valid law of Florida, and that Section 448 is a part of that law.  Defendants further state that FMWA speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 105 of the Complaint.

106.    Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.    Defendants admit that they did not display a notice advising employees of their rights but deny that they were required to do so.

108.    Defendants deny the allegations contained in Paragraph 108 of the Complaint.

## COUNT III

### BREACH OF CONTRACT

109.    Defendants reallage and reincorporate their answers to Paragraphs 1 through 92 of the Complaint.

110.    Defendants admit the allegations contained in Paragraph 110 of the Complaint.

111.    Defendants admit that they offered, and Ms. Maco accepted, for Defendants to obtain and maintain her immigration status and provide a contract for employment in exchange for Ms. Maco's labor.  Defendants deny the remaining allegations contained in Paragraph 111 of the Complaint.

112.    Defendants admit Plaintiffs left Peru and traveled to the U.S. to work for Defendants.  Defendants are without knowledge or sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 112 of the Complaint, and therefore, deny same and demand strict proof.

113.    Defendants are without knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 113 of the Complaint, and therefore, deny same and demand strict proof.

114.    Defendants deny the allegations contained in Paragraph 114 of the Complaint.

115.    Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116.    Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations contained in Paragraph 117 of the Complaint.

## COUNT IV

### FRAUD

118.    Defendants reallage and reincorporate their answers to Paragraphs 1 through 92 of the Complaint.

119.    Defendants deny the allegations contained in Paragraph 119 of the Complaint.

120.    Defendants deny the allegations contained in Paragraph 120 of the Complaint.

121.    Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122.    Defendants deny the allegations contained in Paragraph 122 of the Complaint.

123.    Defendants deny the allegations contained in Paragraph 123 of the Complaint.

124.    Defendants deny the allegations contained in Paragraph 124 of the Complaint.

125.    Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126.    Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127.    Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128.    Defendants deny the allegations contained in Paragraph 128 of the Complaint.

## COUNT V

### VIOLATION OF THE TRAFFICKING VICTIMS

### PROTECTION REAUTHORIZATION ACT

129.    Defendants realloge and reincorporate their answers to Paragraphs 1 through 92 of the Complaint.

130.    Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131.    Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132.    Defendants deny the allegations contained in Paragraph 132 of the Complaint.

133.    Defendants deny the allegations contained in Paragraph 133 of the Complaint.

134.    Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135.    Defendants deny the allegations contained in Paragraph 135 of the Complaint.

136.    Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137.    Defendants deny the allegations contained in Paragraph 137 of the Complaint.

138.    Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139.    Defendants deny the allegations contained in Paragraph 139 of the Complaint.

140.    Defendants deny the allegations contained in Paragraph 140 of the Complaint.

141.    Defendants deny the allegations contained in Paragraph 141 of the Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

Defendants assert the following defenses and affirmative defenses without assuming the burden of proof where such burden is otherwise on the Plaintiffs.  Defendants reserve the right to amend their defenses, including without limitation, any defenses based upon information to be learned through discovery.

### FIRST DEFENSE

### (Material Breach)

Plaintiffs entered into employment agreements with Defendants pursuant to which Plaintiffs agreed to act as the Defendants' housekeeper and nanny.  In exchange, Defendants provided a weekly salary, room and board, health care, and the legal fees associated with obtaining proper immigration authorization to work in the United States.  Plaintiffs materially failed to perform under the employment contracts by leaving their employment with Defendants. Therefore, the Complaint, and each purported cause of action contained therein, is barred by Plaintiffs' material breach of the employment contracts.

### SECOND DEFENSE

### (Good Faith)

Defendants at all times acted in good faith and are not guilty of any wrongdoing. Plaintiffs entered into employment agreements with Defendants pursuant to which Plaintiffs agreed to act as the Defendants' housekeeper and nanny.  In exchange, Defendants provided a weekly salary, room and board, health care, and the legal fees associated with obtaining proper immigration authorization to work in the United States.

**THIRD DEFENSE**

(Obligations Fully Performed)

Defendants performed under the employment agreements and were prepared to continue their employment of Plaintiffs pursuant to the contracts.  Defendants provided Plaintiffs with a weekly salary, room and board, health care, and the legal fees associated with obtaining proper immigration authorization to work in the United States.  Consequently, Plaintiffs are barred from recovering any alleged damages, attorneys' fees, costs of litigation, or any other expenses from Defendants.

**FOURTH DEFENSE**

(Discharge)

Plaintiffs entered into employment agreements with Defendants pursuant to which Plaintiffs agreed to act as the Defendants' housekeeper and nanny.  In exchange, Defendants provided a weekly salary, room and board, health care, and the legal fees associated with obtaining proper immigration authorization to work in the United States.  Plaintiffs committed the first breach of the employment contracts, and as such, Defendants can treat the breach as a discharge of Defendants' contract liability.

**FIFTH DEFENSE**

(Ratification)

Plaintiffs have ratified any claim for violation of FLSA, FMWA, and breach of contract because they were aware of the alleged contractual and wage violations that purportedly give rise to their lawsuit.  By virtue of the Plaintiffs' allegations, Plaintiffs were not paid according to the contracts and were required to work additional days without compensation.  Despite this, several years later, Plaintiffs decide to bring this action against Defendants based on alleged violations of

FLSA, FMWA, and breach of contract.  Plaintiffs did not try to leave their employment with Defendants when these alleged violations first occurred.  Instead, Plaintiffs continued their employment for several years.  Therefore, because of Plaintiffs' continued acceptance of the benefits of the contract and failure to complain of the alleged contractual violations at the time they became aware of such alleged violations, Plaintiffs ratified the conduct they are now complaining of.  Thus, their claims for violation of FLSA, FMWA, and breach of contract must fail.

## SIXTH DEFENSE

### (Laches)

Plaintiffs' claims are barred by the doctrine of laches.  Plaintiffs unreasonably delayed in bringing this suit after the alleged violations of FLSA, and FMWA, and breach of contract first began.  By virtue of the Plaintiffs' allegations, Plaintiffs were not paid according to the contracts and were required to work additional days without compensation.  Despite this, several years later, Plaintiffs decide to bring this action against Defendants based on alleged violations of FLSA, FMWA, and breach of contract.  Plaintiffs did not try to leave their employment with Defendants when these alleged violations first occurred.  Instead, Plaintiffs continued their employment for several years.  Defendants relied on and are prejudiced by this delay.

## SEVENTH DEFENSE

### (Waiver)

Plaintiffs waived any claim for violation of FLSA, FMWA, and breach of contract because they were aware of the alleged contractual violations and wage violations that purportedly give rise to this lawsuit.  By virtue of the Plaintiffs' allegations, Plaintiffs were not paid according to the contracts and were required to work additional days without compensation.

Despite this, several years later, Plaintiffs decide to bring this action against Defendants based on alleged violations of FLSA, FMWA, and breach of contract.  Plaintiffs did not try to leave their employment with Defendants when these alleged violations first occurred.  Moreover, based on Plaintiffs' continued acceptance of the benefits of the contracts and failure to complain of the alleged contractual violations and wage violations at the time they became aware of such alleged violations, Plaintiffs waived their right to bring any claim for violation of FLSA, FMWA, and breach of contract.

## EIGHTH DEFENSE

### (Estoppel)

Plaintiffs are estopped from bringing this action because they were aware of the alleged contractual violations and wage violations in the contract which purportedly give rise to this action.  By virtue of the Plaintiffs' allegations, Plaintiffs were not paid according to the contracts and were required to work additional days without compensation.  Despite this, several years later, Plaintiffs decide to bring this action against Defendants based on alleged violations of FLSA, FMWA, and breach of contract.  Plaintiffs did not try to leave their employment with Defendants when these alleged violations first occurred.  Defendants relied on Plaintiffs' continued employment as an acceptance of the employment terms.  Accordingly, Defendants did not seek to hire other housekeeper/nannies who could have potentially have cost Defendants less during that time.  Therefore, Plaintiffs are estopped from bringing this action.

## COUNTERCLAIM

Defendants/Counter-Plaintiffs Javier Hoyle and Patricia Perales, individually and as guardians of P.H., hereby file their Counterclaim against Plaintiff/Counter-Defendant Alejandra Ramos Ramos ("Ms. Ramos"). The Hoyles allege as follows:

### NATURE OF CASE, JURISDICTION, PARTIES AND VENUE

1.     This is an action for assault, battery, intentional infliction of emotional distress, and false imprisonment. In 2002, Ms. Ramos agreed to act as the Hoyle's housekeeper and nanny in Puerto Rico and later in Key Biscayne, Florida. In exchange, the Hoyles provided Ms. Ramos with a monthly salary, room and board, health care, and the legal fees associated with obtaining proper immigration authorization to work in the United States. In 2005, the Hoyles became aware that Ms. Ramos was abusing P.H. Because of Ms. Ramos' abuse, the Hoyles and P.H. have been injured. Accordingly, the Hoyles, individually and on behalf of P.H., bring this action for monetary damages in excess of Seventy Five Thousand Dollars ($75,000.00), as well as interest, attorney's fees, and costs.

2.     Ms. Ramos is a Peruvian national who was during the time when a significant portion of the material events complained of, residing in Miami-Dade County, Florida. Ms. Ramos currently resides in Miami-Dade County, Florida.

3.     Javier Hoyle is Peruvian nation and a U.S. resident who was during the time when a significant portion of the material events complained of, residing in Miami-Dade County, Florida. Mr. Hoyle currently resides in Miami-Dade County, Florida.

4.     Patricia Perales is a U.S. citizen who was during the time when a significant portion of the material events complained of, residing in Miami-Dade County, Florida. Ms. Perales currently resides in Miami-Dade County, Florida.

5.      P.H. is a minor U.S. citizen who was during the time when a significant portion of the material events complained of, residing n Miami-Dade County, Florida.  P.H. currently resides in Miami-Dade County, Florida.

6.      Venue is proper in Miami-Dade County because it is where a significant portion of the material events complained of occurred and where all the parties presently reside.

7.      All conditions precedent to this action have been satisfied.

## GENERAL FACTUAL ALLEGATIONS

8.      In 2002, the Hoyles hired Ms. Ramos in Peru, and arranged for her to come to Puerto Rico and later the Key Biscayne, Florida to work as a housekeeper and nanny for P.H. who was one year old at the time.

9.      Ms. Ramos signed an employment contract which stated her hourly wage ($7.00 / hour) and job responsibilities.  In addition, pursuant to the contract, the Hoyles promised to maintain legal immigration status and work authorization for Ms. Ramos.

10.     From 2002 until 2004, Ms. Ramos worked for the Hoyles in Puerto Rico.

11.     In 2004, the Hoyles, with Ms. Ramos, moved from Puerto Rico to Key Biscayne, Florida.

12.     In the spring of 2005, the Hoyles began to notice that P.H. was behaving strangely.  At one point, P.H. asked his mother to suck on his tongue.  Ms. Perales surprised by this request, asked P.H. why he would want her to do that.  In response, P.H. stated because Ms. Ramos would suck his tongue.  Ms. Perales further asked what else Ms. Ramos did to him, and P.H. responded that Ms. Ramos would grab his penis.  After these allegations, Ms. Perales noticed that Ms. Ramos would keep P.H. in Ms. Ramos' room with the door closed.  Immediately upon seeing this situation, Ms. Perales would insist that Ms. Ramos open the door to the bedroom

and would ask Ms. Ramos why the door was closed.  Ms. Ramos' responses were unsatisfactory.

13.     Given the nature of P.H.'s statements of what Ms. Ramos was doing to him, the Hoyles took P.H. to a pediatrician, Dr. Ramon Guevara, for a check up.  While Dr. Guevara reported that P.H. had no bruising, he nevertheless recommended that the Hoyles take P.H. to see a psychologist.

14.     The Hoyles took Dr. Guevara's advice and took P.H. to see a psychologist.  At first, they went to a psychologist for a few months.  Because P.H. was not comfortable with this psychologist, the Hoyles took P.H. to see another psychologist, Dr. Graciela Nearing.  P.H. also saw a psychologist in Peru, Dr. Amparo Salinas, during the times that the Hoyles returned to Peru on vacation.  Many of these visits were group sessions with the Hoyles and P.H.  P.H. saw the various psychologists for almost a year.

15.     During this time, and to this day, P.H. would only talk about what Ms. Ramos did to him with his parents and the psychologists.

16.     Because of this abuse, the Hoyles planned on returning to Peru and leaving Ms. Ramos there.  However, Ms. Ramos found out about the Hoyles' plan, and before the Hoyles could return to Peru, in the summer of 2005, Ms. Ramos left her employment with the Hoyles.

17.     Ms. Ramos left behind a few items, including a hand-written note to the Hoyles.  In the note, Ms. Ramos states that she knows the Hoyles did not want her to give affection to P.H.

18.     As a result of Ms. Ramos' abuse of P.H., the Hoyle family has been negatively and permanently affected.

19.     P.H. has suffered severe emotional and physical distress, including nervousness, frustration, and constipation.  Further, P.H. fears that others will abuse him like Ms. Ramos did.

20.     Additionally, the Hoyles themselves have suffered severe emotional distress.

21.     Accordingly, the Hoyles have retained the law firm of Greenberg Traurig, P.A., and are obligated to pay attorneys fees, costs, and expenses in connection with this action.

22.     All conditions precedent for this action have occurred, been satisfied, been discharged, or been excused.

## CLAIMS FOR RELIEF

### COUNT I

### ASSAULT

23.     The Hoyles reallege and incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

24.     Ms. Ramos knowingly and intentionally abused P.H., who was at the time of the abuse approximately four years old.  Ms. Ramos would suck on P.H.'s tongue and touch his penis.  Ms. Ramos had no permission or authority to abuse PH in this manner.

25.     Ms. Ramos would take P.H. to her bedroom and close the door so that no one could see what Ms. Ramos was doing to P.H.  Such actions, coupled with Ms. Ramos' other abuse, created P.H.'s well-founded fear of imminent peril and further abuse by Ms. Ramos.  P.H. was helpless against Ms. Ramos' actual and attempted abuse and extremely fearful.  Ms. Ramos' actions constituted an unlawful offer of further bodily injury to P.H.

26.     Ms. Ramos' position as P.H.'s nanny and the reality that she was alone with P.H. several times a day, gave Ms. Ramos the ability and the opportunity to further abuse P.H.

WHEREFORE, the Hoyles respectfully request that the Court award them compensatory and punitive damages, interest, attorneys fees and costs, and any and all further relief as this Court deems just and proper.

## COUNT II

## BATTERY

27.     The Hoyles reallege and incorporate by reference paragraphs 1 through 26 as if fully set forth herein.

28.     P.H. suffered harmful and offensive contact by Ms. Ramos.  Ms. Ramos would suck on P.H.'s tongue and touch his penis.

29.     Ms. Ramos intended to cause such harmful and offensive contact as demonstrated by the fact that she did so in her bedroom with the door closed and when the Hoyles were not present.

30.     Ms. Ramos took advantage of the fact that P.H. was only four years old when she abused him, and that P.H. would not understand what Ms. Ramos was doing.

31.     Ms. Ramos acted with reckless disregard of the consequences of her abuse of P.H.

WHEREFORE, the Hoyles respectfully request that the Court award them compensatory and punitive damages, interest, attorneys fees and costs, and any and all further relief as this Court deems just and proper.

## COUNT III

## INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

32.     The Hoyles reallege and incorporate by reference paragraphs 1 through 31 as if fully set forth herein.

33.     Ms. Ramos' abuse of P.H. was intentional.  Ms. Ramos would suck on P.H.'s tongue and touch his penis in her bedroom with the door closed and when the Hoyles were not present.  Ms. Ramos knew or should have known that her behavior would cause P.H. and the Hoyles emotional distress.

34.     Ms. Ramos' abuse of P.H. was outrageous, beyond all bounds of decency, utterly intolerable, and criminal.

35.     Ms. Ramos' abuse caused severe emotional and physical distress to P.H. and the Hoyles.  P.H. and the Hoyles required the treatment of various psychologists.

WHEREFORE, the Hoyles respectfully request that the Court award them compensatory and punitive damages, interest, attorneys fees and costs, and any and all further relief as this Court deems just and proper.

## COUNT IV

## FALSE IMPRISONMENT

36.     The Hoyles reallege and incorporate by reference paragraphs 1 through 35 as if fully set forth herein.

37.     Ms. Ramos would forcibly bring P.H. to his bedroom against P.H.'s will and close the door to conceal the fact that she was sucking on P.H.'s tongue and touching his penis.  In doing so, Ms. Ramos detained P.H. against his will without any reasonable or probably cause.

38.     Ms. Ramos' abuse of P.H. was outrageous, beyond all bounds of decency, utterly intolerable, and criminal.

39.     Ms. Ramos' abuse caused severe emotional and physical distress to P.H. and the Hoyles, including great shame, indignity, mortification, and disgrace.  P.H. required the treatment of various psychologists.  P.H. also suffered bodily injury and resulting pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and expense of medical treatment.  The Hoyles suffered pain and suffering, mental anguish, and loss of capacity for the enjoyment of life.

*CASE NO. 08-CV-21809-MARTINEZ/BROWN*

WHEREFORE, the Hoyles respectfully request that the Court award them compensatory and punitive damages, interest, attorneys fees and costs, and any and all further relief as this Court deems just and proper.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Counsel for Defendants*
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

BY:    /s/ Sandra J. Millor
       STEPHEN JAMES BINHAK
        Florida Bar No.  0736491
        binhaks@gtlaw.com
       SANDRA J. MILLOR
        Florida Bar No.  0013742
        millors@gtlaw.com

*CASE NO. 08-CV-21809-MARTINEZ/BROWN*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2008, I electronically filed the foregoing Defendants' Answer, Defenses, and Affirmative Defenses to Plaintiffs' First Amended Complaint, and Counterclaim with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

   /s/ Sandra J. Millor
    SANDRA J. MILLOR

### <u>Service List</u>

**Erika Deutsch Rotbart, Esq.**
DEUTSCH ROTBART & ASSOCIATES, P.A.
7251 West Palmetto Park Road
Suite 206
Boca Raton, Florida 33433

**Mary Gundrum, Esq.**
FLORIDA IMMIGRANT ADVOCACY CENTER
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137