IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRA RAMOS RAMOS               CASE NUMBER:  08-CV-21809
and MARIA ONELIA MACO CASTRO,       MARTINEZ/BROWN

    Plaintiffs,

v.

JAVIER HOYLE and PATRICIA
PERALES,

    Defendants.
_____ /

### PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIDAVITS

    Plaintiffs ALEJANDRA RAMOS and ONELIA MACO CASTRO, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 7.5, hereby reply to the response filed by Defendants JAVIER HOYLE AND PATRICIA PERALES in relation to Plaintiffs' Motion for Summary Judgment.

    In their motion, Plaintiffs have asked the Court to grant partial summary judgment on discrete issues related to their Fair Labor Standards Act ("FLSA") claims and grant summary judgment on Defendants' counterclaims against Ms. Ramos and on her claim of retaliation against them. For the reasons stated in the motion and this reply, Plaintiffs ask that the motion be granted. In addition, Plaintiffs ask the Court to strike all or part of Defendants' Affidavits filed with their response. A supplement to Plaintiffs' Statement of Undisputed Facts and exhibits are filed herewith outlining additional facts in response to issues raised by Defendants.

### I. Plaintiffs' Facts Should be Deemed Admitted Since Defendants Failed to Controvert Those Facts As Required by the Local Rules

    Defendants, in their Response (DE 129), failed to controvert Plaintiffs' Statement of Undisputed Material Facts[1] (hereinafter "SOF") as required under S.D. Fla. L.R. 7.5. Rule 7.5(B) and (C) require "a single concise statement of material facts" supported by specific references to pleadings, depositions, or other evidence in the record that "shall correspond with the order and with the paragraph numbering scheme used by the movant," with additional facts added numbered and added at the end. Under Rule 7.5(D), the movant's facts will be deemed admitted unless controverted by the opposing party's statement of facts. Plaintiffs therefore ask that the Court deem Plaintiffs' Statement of Facts admitted.

---

[1] Plaintiffs hereinafter will refer to SOF and the paragraph number.

1

Contrary to these requirements, Defendants did not submit any statement of facts. Courts have deemed facts admitted when an opposing party fails to submit a statement that conforms to Local Rule 7.5.[2] Plaintiffs' facts thus should be deemed admitted. As noted in *Bettis v. Toys "R" Us,* "[l]itigants and Courts are governed by the Federal and Local Rules of Civil Procedure, not the Helpful Suggestions of Civil Procedure. And when a pleading or any legally operative document deviates from these strictures, it is inoperative."[3] Failure to comply renders review of a motion for summary judgment more burdensome to the Court, undermining the goals of the local rules and the efficient administration of justice.[4] Even if the Court were to credit "disputed facts" generally referred to in Defendants' memorandum, Defendants have failed to controvert Plaintiffs' facts with record evidence. For this reason, too, Plaintiffs' facts should be deemed admitted.[5]

**II. Motion for Partial Summary Judgment with Regard to Discrete FLSA Issues Should be Granted**

As argued in their motion, Plaintiffs seek partial summary judgment on discrete issues related to the FLSA claim, including coverage of Defendants as employers and Plaintiffs as employees employed by the Hoyles; record-keeping violations by defendants; and entitlement to liquidated damages. Plaintiffs did not move, however, for summary judgment as to the extent of Defendants' liability under FLSA for unpaid wages. Defendants argue Plaintiffs cannot win on discrete elements at summary judgment if the extent of liability for unpaid wages is not resolved. Courts, however, have decided discrete issues in FLSA cases at summary judgment.[6] This allows courts to streamline cases prior to trial.

---

[2] *See* S.D. Fla. L.R. 7.5(D); *see also Digioio v. H. Koch & Sons*, 944 F.2d 809, 811, n. 6 (11th Cir. 1991) (upholding the application of former Local Rule 10(J)(2), the predecessor to 7.5(D); *Calmaquip Eng'g W. Hemisphere Corp. v. W. Coast Carriers, Ltd.,* 650 F.2d 633, 636 (5th Cir. Unit B 1981); *Southern Grouts & Mortars, Inc. v. 3M Company*, 2008 U.S. Dist. LEXIS 70222 (S.D. Fla. Sept. 16, 2008) (deeming facts admitted where party failed to order and number paragraphs of Statement correctly); *Center Capital Corp. v. Bynum*, 2008 U.S. Dist. LEXIS 69085 (Sept. 11, 2008); *Bien-Aime v. Nanak's Landscaping, Inc.,* 572 F. Supp. 2d 1312, 1313, fn 1 (S.D. Fla. Aug. 12, 2008) (deeming facts admitted where party did not "specifically refute facts" in opposing party's statement); *Sanchez v. Miami-Dade Department of Corrections & Rehabilitation*, 2008 U.S. Dist. LEXIS 37828 at *4 (S.D. Fla. May 8, 2008) (plaintiff's noncompliance allows defendant's statement of facts to be deemed admitted to extent not controverted by admissible facts); *Monsanto Company v. Campuzano,* 206 F. Supp. 2d 1252, 1256-57 (S.D. Fla. 2002).

[3] *Bettis v. Toys "R" Us*, 2009 U.S. Dist. LEXIS 32518 at *8 (April 13, 2009).

[4] *See* Local Rule 7.5 Comments (2008 Amendment) (described in *Bettis*, 2009 U.S. Dist. LEXIS 32518).

[5] Plaintiffs believe their Statement of Facts should be deemed admitted in their entirety. To assist the Court, Plaintiffs offer a summary. As best as Plaintiffs can determine, Defendants <u>admit</u> in their memorandum to all or part of Plaintiffs' facts in SOF 1; 2; 3; 5; 6 (part – travel); 8; 12; 13 (part – do not address monitor); 14 (part – do not address system for keeping of alleged time records); 19; 21; 23; 25; 26; 28; 30; 43 (part - admit they did not threaten suit earlier). Defendants <u>do not offer any facts to controvert</u> Plaintiffs' SOF 4; 7; 9; 10; 11; 13 (nothing specific about monitor); 14 (do not controvert description of system); 15; 20, 21, 22, 25 (details from medical record); 26 (details from medical record); 27; 29; 30 (symptoms listed in record but not repeated in Defendants' memorandum); 31; 32; 33; 34; 35; 36; 37; 38; 39 (part – fact of PH going to wake Ms. Ramos in a.m., lack of lock on door) 40; 41; 42 (part – do not controvert words in letter). Defendants <u>disagree without adducing adequate evidence</u> with SOF 6 (work while traveling); 24 (reasons identified for visiting Dr. Guevara in medical records); 26 (reasons identified for visiting Dr. Nearing and reasons identified for problematic behaviors by P.H. in medical records); 39 (part – fact that no evidence has been offered of restraint); 42 (part – disagree that retaliation was only motivation); 43 (disagree that had opportunity).

[6] *See Gonzalez v. Tanimura & Antle, Inc.,* 2008 U.S. Dist. LEXIS 83326 (D. Ariz. Sept. 29, 2008) (finding time spent waiting was

A. **Defendants are "Employers" and Plaintiffs are "Employees" under the FLSA**

Defendants admit they are covered employers who employed Plaintiffs as employees.[7] Courts have decided issues related to coverage prior to liability.[8] Plaintiffs' Motion on these elements should be granted.

B. **Partial Summary Judgment is Appropriate Because Defendants Do Not Controvert Facts Showing Lack of Adequate Record-Keeping**

Defendants argue that the issue of record-keeping violations should not be decided now because Plaintiffs must meet an initial burden under *Mt. Clements*.[9] However, the issue of record-keeping violations should be decided prior determining liability so Plaintiffs may benefit from inferences permitted by law at trial. In any event, Plaintiffs have met the *Mt. Clements* test because the facts show a just and reasonable inference can be drawn that at least some unpaid wages are owed, and summary judgment is appropriate.[10]

Under the *Mt. Clemens* analysis, the initial burden on employees to show liability is low where employers fail to keep accurate, weekly, contemporaneous records. "Normally an employee may 'easily discharge his burden' by securing and producing the relevant employment records from the employer."[11] When records of hours and pay are inadequate, "an employee carries out his or her burden by 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"[12]

Here, Defendants' own statements allow for a reasonable inference that at least some unpaid wages are owed.[13] Defendants admit Plaintiffs worked *at least* 40-46 hours most weeks and received *at most* $700 per month (Ms. Ramos) or $800 (Ms. Maco) some months.[14] Defendants state Plaintiffs worked 40-46 hours per week each week.[15] Even calculated at $5.15 per hour (the lowest legal minimum wage during the time period at issue) for 40 hours per week for a month comprised of four work weeks,[16] $700 and $800 is less than

---

compensable and not accurately reflected in defendants' records, even though hours worked were still in dispute); *Belt v. Emcare, Inc.,* 444 F. 3d 403, 407 (5th Cir. Tex. 2006) (affirming grant of partial summary judgment to plaintiffs on eligibility of nurse practitioners and physician assistants for overtime and liquidated damages without deciding whether employer was liable for unpaid wages or for how much); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. Tex. 2001) (reversing partial summary judgment for defendants on issue of eligibility and remanding for determination of amount of liability); *Takacs v. Hahn Auto. Corp.,* 246 F.3d 776 (6th Cir. Ohio 2001) (affirming partial summary judgment for plaintiffs because employers failed test for exemption).
[7] DE 129 at p. 2.
[8] *See Takacs,* 246 F.3d 776; *Belt,* 444 F. 3d 403; *Vela*, 276 F.3d 659.
[9] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972).
[10] *See* DE 118; SOF 7-14 (outlining undisputed facts on record-keeping).
[11] *Stevenson v. Orlando's Auto Specialists, Inc.,* 2008 U.S. Dist. LEXIS 72362 at *4 (M.D. Fla. Sept. 22, 2008).
[12] *Id.* at *5.
[13] Defendants do not contest Plaintiffs had day and nighttime duties including cooking, cleaning, and childcare. *SOF* 1, 6, 13.
[14] Ms. Perales stated she paid Ms. Ramos $700 per month. Perales dep., vol. I, l. 10-19. Defendants state Plaintiffs worked 40 -46 hours per week. DE 59-4, No. 5. Defendants state Ms. Maco received $800 before July 2006.
[15] DE 59-3, No. 6.
[16] Defendants do not contest that at least some months Plaintiffs worked every week. *See* DE 129 at pp. 6-8.

the $824 required.[17] The undisputed facts therefore establish that at least some wages are owed, and Plaintiffs are therefore entitled to the appropriate inferences at trial. This case is like *Stevenson v. Orlando's Auto Specialists, Inc.,* in that it is Defendants' own evidence that "establishes…knowledge that [plaintiff] was not compensated according to the FLSA."[18] The inference is reasonable and just, even if the amount owed will be an issue for trial.[19] With a reasonable inference that some unpaid wages are due, record-keeping violations may be decided even if the extent of liability is left for trial.

The facts showing Defendants' record-keeping was inadequate are uncontested.[20] Defendants have not produced any evidence of complete, accurate, week-by-week records, as required under the FLSA. Thus, they have not rebutted Plaintiffs' facts, and Plaintiffs should receive partial summary judgment on this issue.[21]

### C. **Partial Summary Judgment on Liquidated Damages is Appropriate**

Defendants also produce no evidence to rebut Plaintiffs' facts showing that Defendants' failed to act in good faith based on reasonable grounds as required under FLSA to avoid an award of liquidated damages. Defendants argue that the issue of liquidated damages can only be determined after liability for unpaid wages has been established. The question of liquidated damages is a discrete issue appropriately reached when the uncontested facts show a lack of good faith and reasonableness, or, alternately, where Defendants' own admissions establish that some level of FLSA liability reasonably may be inferred, as is the case here.[22]

Defendants also aver that their affirmative defense of "good faith" prevents the Court from granting partial summary judgment. However, Defendants have not submitted any <u>evidence</u> to support that defense. Merely asserting a defense in a pleading is no defense to a motion for summary judgment based on the record

---

[17] The $5.15 rate is lower than the federal or Florida state minimum wage owed for part of the time during which each woman worked for Defendants and thus is a very generous estimate, sufficient to reach a reasonable inference and make Defendants' record-keeping an issue appropriate for summary judgment. Calculated at the 2008 Florida minimum wage, for example, the total owed based on Defendants' minimal estimates would have been roughly $1086 per month.

[18] *Stevenson v. Orlando's Auto Specialists, Inc.,* 2008 U.S. Dist. LEXIS 72362 at *7 (M.D. Fla. Sept. 22, 2008).

[19] Defendants misstate FLSA rules when referring to paid vacation they allege Plaintiffs enjoyed. See Defendants' Response at pp. 6-7. Pay under the FLSA is calculated on the basis of workweeks. Even were Defendants' allegations that they provided paid vacation accurate, which is contested, that would not undermine a reasonable inference that at least some unpaid wages are owed during weeks in which Plaintiffs worked at least 40-46 hours but received less than minimum wage for hours worked.

[20] DE 129 at p. 8. Defendants state it is uncontested that they maintained accurate records for Ms. Ramos for a period of roughly one year, without analyzing the FLSA standard for adequate records. What is uncontested is that Defendants' purported records for part of Ms. Ramos' period of employment and complete lack of records for any other time demonstrate Defendants never kept records as required under the FLSA. The FLSA does not allow employers to keep haphazard records or no records. Neither the purported records nor the nonexistent records are contemporaneous, week-by-week, accurate records, as required under the FLSA. *See* DE 118 at p. 8; SOF 7-14.

[21] Defendants cite deposition statements by Ms. Maco and Ms. Ramos about whether they were owed wages from the Hoyles. Under Fed. R. Evid. 701, these statements must be disregarded as inadmissible legal conclusions.

[22] *See supra* part II, B.

evidence. The uncontested facts show that Defendants' affirmative defense fails with regard to the FLSA claims. Thus, partial summary judgment on liquidated damages is appropriate.

### III. No Reasonable Jury Could Find for Defendants on the Counterclaims

Defendants have failed to controvert Plaintiffs' facts regarding Defendants' counterclaims against Ms. Ramos or Ms. Ramos' FLSA retaliation claim against them.[23] As discussed above, these facts should therefore be deemed admitted. Defendants attempt to survive summary judgment by submitting the self-serving affidavits of Ms. Perales and Mr. Hoyle. The affidavits are replete with inadmissible hearsay and baseless assertions for which Defendants assert no personal knowledge. Such affidavits do not constitute competent evidence sufficient to defeat summary judgment, but border on being sham affidavits. The affidavits should be stricken. As Plaintiffs have demonstrated in their Motion, Defendants counterclaims of battery, assault, false imprisonment, or intentional infliction of emotional distress against Ms. Ramos are baseless, and no reasonable jury could find for Defendants on them.. Summary judgment is therefore appropriate.

#### A. Standard for Striking Affidavits Offered in Opposition to Summary Judgment Motion

A motion to strike an affidavit or portions of an affidavit in opposition to a motion for summary judgment is governed by Rule 56(e) of the Rules of Civil Procedure.[24] In order to be considered by the Court, an affidavit "must contain enough factual support for a court to determine that the averments were based upon the affiant's personal knowledge. The factual averments set forth in an affidavit must be admissible in evidence and cannot be conclusory or based on mere information and belief."[25] In *Pace v. Capobianco*, the 11th Circuit noted that affidavits not based on personal knowledge do not raise genuine issues of fact.[26] Moreover, "[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge."[27] The Defendants' affidavits relate the observations and conclusions allegedly made by another nanny and offer conjecture about what they believe may have happened out of their sight. These statements are not based on personal knowledge and incorporate factually unsupported conclusions. Defendants also repeat hearsay in their affidavits.[28] Where a party offers an affidavit including hearsay, the

---

[23] SOF 16-43.
[24] FED. R. CIV. P. 56(e).
[25] *Monroe Firefighters Ass'n v. City of Monroe*, 2009 U.S. Dist. LEXIS 27698 at *10 (W.D. La. Mar. 31, 2009) (internal citation omitted.) See also *TI Inv. Mgmt. Co. v. Miele* (In re Miele), 2007 Bankr. LEXIS 3059 (Bankr. N.D. Ga. Apr. 4, 2007); *Thomas v. Atmos Energy Corp.,* 223 Fed. App'x. 369, 374 (5th Cir. 2007).
[26] *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002).
[27] *El Deeb v. Univ. of Minn.,* 60 F.3d 423, 428 (8th Cir. 1995).
[28] *See* Fed. R. Evid. 801(c). Inadmissible hearsay is an out-of-court statement offered for the truth of the matter asserted and not falling within an exception to the hearsay rule, and it cannot be considered on a motion for summary judgment. *See also Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999); *Allen v. SunTrust Banks,* 2008 U.S. Dist. LEXIS 73453 (N.D. Ga. Sept. 24, 2008); *H. Sand & Co., Inc. v. Airtemp Corp*., 934 F.2d 450, 454-55 (2nd Cir. 1991).

party must set out the "means by which the [statements] could be reduced to an admissible form."[29] Defendants do not offer any explanation of the means by which such statements could be made admissible.

Defendants' affidavits also include contradictions of prior testimony created for the sole purpose of avoiding summary judgment. In *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, the 11th Circuit explained, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."[30] A court, faced with such contradictory testimony, may disregard the affidavit as a sham.[31] To do otherwise would undermine the summary judgment process. "The purpose of summary judgment motions—'to weed out unfounded claims, specious denials, and sham defenses,' is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony."[32]

Because Defendants' affidavits are "replete with hearsay and conclusory, factually unsupported statements,"[33] statements not based on personal knowledge, and self-serving statements in "sham affidavits," the Court should disregard Defendants' affidavits, particularly the specific statements identified below.[34]

### B. Defendants Have Produced No Evidence to Prove Their Counterclaims

Defendants do not controvert Plaintiffs' facts. Plaintiffs' facts should be accepted.[35] Defendants offer no admissible evidence to show that P.H. was ever abused or mistreated in any way by Ms. Ramos. Defendants have not even offered admissible evidence of P.H.'s alleged statements about abuse. Instead, Defendants repeat a statement by Ms. Perales that P.H. told her in April 2005 that Ms. Ramos was sucking his tongue or touching his penis inappropriately. Ms. Perales' statement of what P.H. allegedly told her, however, is inadmissible hearsay. Defendants offer the statement for the truth of the matter asserted: that Ms. Ramos engaged in the alleged conduct. Under Fed. R. of Evid. 801(c), the statement should be disregarded. Mr.

---

[29] *Sklar v. Clough,* 2007 U.S. Dist. LEXIS 49248 at *8 (N.D. Ga. July 6, 2007).
[30] *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).
[31] *Id.* at 658-59. *See also McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) (explaining that "we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony."); *Williams v. R.W. Cannon, Inc.*, 2008 U.S. Dist. LEXIS 67490, 7-8 (S.D. Fla. Sept. 4, 2008) (finding a sham affidavit when defendant moved from a specific answer to a vague answer about source of batteries).
[32][32] *Adelman-Tremblay v. Jewel Cos.*, 859 F.2d 517, 521 (7th Cir. Wis. 1988) (internal citations omitted) (cited by *Holder v. State Farm Fire & Cas. Co.*, 2008 U.S. Dist. LEXIS 83146 at *14, fn 6 (S.D. Ga. Aug. 21, 2008)).
[33] *Hill v. Oil Dri Corp.*, 198 Fed. Appx. 852, 857, fn 5 (11th Cir. Ga. 2006).
[34] *Id.* (affirming striking of affidavits which did not satisfy Rule 56(e) as to personal knowledge and admissibility).
[35] Plaintiffs will refer to their Motion and SOF for specific facts where confidential information supports Plaintiffs' argument.

Hoyle says also that Ms. Perales repeated P.H.'s statements to him.[36] That is hearsay within hearsay and inadmissible.[37] Defendants offer no competent evidence of inappropriate behavior by Ms. Ramos.

Defendants state that "Ms. Ramos would put P.H. to bed strangely, lie on top of him, rub him, and do 'something strange to him in the bed'." They do not attribute that statement to anyone in particular and do not claim personal knowledge. This is hearsay if offered as truth, albeit carefully-worded hearsay.[38] Ms. Perales has stated she personally observed only that Ms. Ramos and P.H. "would be" in a room sometimes with a closed door, which she concluded was evidence of abuse.[39] Mr. Hoyle did not report observing any inappropriate behavior. Defendants offer no evidence based on personal knowledge that Ms. Ramos abused their child. [40] To the extent their affidavits suggest otherwise, they should be dismissed as shams.

### C. Defendants Have Not Rebutted Plaintiffs' Showing That There is No Evidence of Reports of Abuse, Treatment for Abuse, or Harm from Abuse

As argued in Plaintiffs' Motion, and unrebutted in Defendants' response, Defendants made no report of the now-alleged abuse to any child protection or law enforcement agency and took no action against Ms. Ramos after allegedly learning of abuse.[41] Defendants offer no evidence that any medical professionals suspected abuse, reported abuse, or identified harm as a result of abuse.[42] Defendants do not controvert Plaintiffs' facts regarding alleged visits to the school psychologist during their summer 2005 vacation in Peru.[43] Defendants do not offer facts to support their claims regarding their actions in seeking treatment – that they identified abuse as a reason for seeking treatment rather than other issues, they sought treatment either before or soon after Ms. Ramos left, they did not enter treatment with Dr. Umbel because she did not speak Spanish, that P.H. was treated by Dr. Nearing soon after spring 2005 rather than more than a year later. Defendants' Response, in fact, is notably lacking in specific dates and does not controvert Plaintiffs' timeline.[44]

---

[36] In their response, Defendants state Mr. Hoyle said P.H. said this directly to him, but the cite to p. 199 of Mr. Hoyle's deposition actually reports that Mr. Hoyle was told by Ms. Perales.
[37] DE 129 at 11-12. Defendants also now state that any statement they allege P.H. to have made was made to them alone. This contradicts their earlier pleadings in a self-serving manner to explain away the lack of evidence from medical professionals.
[38] In her deposition, Ms. Perales clearly states she did not observe this so-called "strange" behavior. Perales dep., p. 36, l. 2-15.
[39] *See* SOF 40.
[40] Ms. Maco, on the other hand, saw Ms. Perales use force to discipline P.H., including hitting P.H., pulling his ear till it bruised, and putting him in a cold shower when he did not cooperate. *See* Exhibit V-16, Maco deposition, p. 203, l.22-25 ; 204, l. 1-17.
[41] SOF 19, 46; Supplemental SOF 44; 24-27, 32. Because of the Protective Order, Plaintiffs will describe the evidence or lack of evidence seen in confidential reports generally and refer for specifics to the parts of Plaintiffs' Motion and SOF filed under seal.
[42] SOF 24-37; Supplemental SOF 44.
[43] *See* SOF 27, 37.
[44] *See* DE 101-4, No. 2, identifying the first appointment with Dr. Nearing as May 5, 2006, more than a year after Defendants first stated they sought treatment, and lasted for roughly six months, not more than a year. This directly contradicts Ms. Perales' affidavit (p. 2) and Mr. Hoyle's affidavit (p. 2) regarding length of treatment and is self-serving. *See also* Plaintiffs' SOF 26. *Compare* Hoyle dep., p. 199, l. 18-25, p. 200, l. 1-16, p. 201, l. 15-20, stating Defendants sought treatment for P.H. "immediately" and the visit with Dr. Umbel and first visit with Dr. Nearing started nearly "simultaneously" in May or June 2005, prior to the time Ms. Ramos left.

Defendants: make only unsupported statements about the actions of medical professionals. Defendants argue in their Response, for example, that "[t]he evidence reveals that Ms. Perales, at the time she and P.H. visited these doctors, told all of these doctors of Ms. Ramos' molestation of P.H."[45] They offer no evidence to support this claim and do not rebut Plaintiffs' facts showing otherwise.[46] Defendants assert Dr. Guevara "recorded the abuse," but do not offer any evidence to substantiate that claim.[47] They do not controvert Plaintiffs' facts showing that no medical professional ever reported abuse, which would have violated the law governing the obligations of medical professionals if in fact they had suspected any abuse.[48]

Defendants state that behavioral and medical symptoms that emerged early in P.H.'s life – such as constipation, problems eating, and others - are linked to abuse, but offer no evidence of a link.[49] These are unsupported conclusions and therefore are not entitled to any weight.[50] Defendants have not controverted Plaintiffs' facts showing that "symptoms" emerged much earlier than the alleged abuse.[51]

Defendants argue they suffered harm as a result of alleged abuse, but offer no evidence of harm.[52]

In sum, Defendants offer only the Hoyles' unsupported testimony in support of their allegations of child abuse, and claim that it is enough.[53] However, there is no competent evidence to establish any of their counterclaims before a reasonable jury, and summary judgment on these claims should therefore be granted.

**IV. Plaintiff Ramos Should Be Granted Summary Judgment on the Claim of FLSA Retaliation**

With regard to Plaintiff Ramos' claim for FLSA retaliation, summary judgment also is appropriate. Defendants do not controvert Plaintiffs' facts demonstrating that she engaged in protected activity, that Defendants' counterclaims are baseless, and that Defendants asserted those counterclaims for a retaliatory purpose.[54] The Court should reject Defendants' assertion of Florida's litigation privilege and First Amendment rights to maintain baseless counterclaims against Ms. Ramos.

    A.  **There are No Disputes of Material Fact as to the Elements of the FLSA Retaliation Claim**

---

[45] DE 129 at p. 11.
[46] See SOF 24-32.
[47] See Perales Affidavit at p. 2.
[48] See Perales Affidavit at p. 2, Supplemental SOF 44.
[49] See Defendants' Response, DE 129, at 12, Perales Affidavit at p. 2; SOF at 30 .
[50] Also, these are conclusions appropriately reached by an expert, and Defendants are not experts. *See* Fed. R. Evid. 701, 702.
[51] SOF 31-33, 25-6.
[52] SOF 28-38.
[53] "…[T]he Hoyles believed that Ms. Ramos was abusing P.H. and…this abuse led the Hoyles to seek medical and psychological treatment by a variety of doctors. This is sufficient for the counterclaims of battery and assault…[T]his testimony is sufficient for the claim of intentional infliction of emotional distress [and] also sufficient for the claim of false imprisonment…"DE 129 at p. 12-13.
[54] *See supra,* part III, SOF 19-44; Supplemental SOF 44-45 re: counterclaims; SOF 41-43, SOF 46-48 Re: retaliation.

Defendants do not controvert the evidence that Ms. Ramos engaged in protected activity[55] or that the counterclaims are baseless.[56] Defendants say a dispute of material fact exists simply because Defendants assert their belief that abuse occurred.[57] Using this reasoning, any statement by a party, even if inadmissible or unsupported, would maintain an action past summary judgment. That is not the standard.

Defendants add new testimony to the effect that they did not bring their claims earlier because they did not know Ms. Ramos' whereabouts and thus could not sue her.[58] Defendants' new statements should be rejected because unsupported by facts and directly conflicting with Defendants' own words and documents.

It is undisputed that Defendants continued to employ Ms. Ramos as their nanny in their home for almost three months after allegedly becoming aware she was sexually abusing their child.[59] They did not fire her, send her back to Peru, report her to authorities, or file a lawsuit.[60] They had "meaningful" opportunity to take legal action, but chose to do nothing. At the very least, Defendants learned of Ms. Ramos' whereabouts when she notified them of her intent to sue, but still they did not file any charge until she did. Certainly, Defendants did not need to know her location to report abuse to authorities whose job it is to find those who violate the law.

In addition, Defendants admit Mr. Hoyle spoke by telephone at least once with Ms. Ramos after she left, Ms. Ramos asked about the return of her passport, and Mr. Hoyle did not ask where she was.[61] Defendants, moreover, could have used alternative mechanisms for service and filed claims at any point. Defendants never sought professional advice regarding claims before this lawsuit was filed.[62] Mr. Hoyle wrote the Department of Homeland Security in July 2005 stating, "[f]or reasons that I do not know she abandoned her employment with me and escaped from my home," but did not ask for advice on finding Ms. Ramos or state that he was looking for her because he wanted to press child abuse charges.[63] Finally, Defendants at any point could have and ultimately did use Ms. Ramos' personal identification information to access a Peruvian government website and learn the address where she lived after leaving their employ. Defendants gave Plaintiffs a document with that address during discovery.[64] Defendants' assertion that they lacked meaningful opportunity to bring claims prior to January 2009 should be disregarded because unsupported by facts and self-serving.

A. **Neither the U.S. nor Florida Constitution Bar Summary Judgment on FLSA Retaliation**

---

[55] SOF 41.
[56] *See supra,* part III, SOF 19-44; Supplemental SOF 44-45.
[57] See DE 129, p. 14.
[58] Perales affidavit at p. 2-3; Hoyle affidavit at p. 2-3.
[59] SOF 19.
[60] *Id.*
[61] Supplemental SOF 46.
[62] Supplemental SOF 47; Ex. V-17.
[63] *Id.*
[64] Supplemental SOF 48; Exhibit V-15. Defendants' access was unauthorized and violated the privacy terms stated on the website.

Defendants argue the U.S. Constitution's right to petition and the Florida Constitution (discussed in terms of the "Florida litigation privilege") bar this Court from granting summary judgment on the FLSA retaliation claim. Defendants' arguments are not supported by law. First, Defendants were able to file their counterclaims, so the right to petition was respected. Second, the Florida litigation privilege is not applicable because Defendants' counterclaims are not "based on the party's conduct during litigation."[65] Third, "Florida courts have indicated that the litigation immunity privilege is an affirmative defense."[66] "[T]he litigation privilege is properly dealt with at the motion to dismiss stage.[67] Defendants failed to raise this defense in their Motion to Dismiss,[68] and it is waived. Fourth, the privilege is not absolute, but rather a "judicially created privilege [that] must be measured against the statutory right" to determine whether the purpose of the statute is "eviscerated" by the application of the privilege.[69] Applying the privilege to disallow FLSA retaliation claims simply because defendants' retaliation took the form of filing state claims would eviscerate an important FLSA provision. Sixth, courts have been reluctant to apply the privilege to federal claims.[70] Finally, the privilege does not bar summary judgment where undisputed facts show that baseless counterclaims were filed for a retaliatory motive after the plaintiff engaged in protected activity. There is no dispute of material fact here, and the Court should grant Plaintiff Ramos' motion for summary judgment as to retaliation under the FLSA.

### VIII. Conclusion

For the reasons stated, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to strike all or part of Defendants' affidavits and for partial summary judgment on the FLSA claims and summary judgment on the counterclaims and FLSA retaliation claim.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
Counsel for Plaintiffs
4755 Technology Way, Suite 106
Boca Raton, Florida 33431
Telephone:    561.361.8010
Facsimile:    561.361.8086
 BY:    Erika Deutsch Rotbart s/.

---

[65] Defendants' counterclaims arose from distinct facts, almost four years earlier; were not mandatory counterclaims; and Defendants' offer no evidence to support their argument they acted with anything other than a retaliatory motive.
[66] A*m. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co*., 810 So.2d 996, 998 (Fla. 4th DCA 2002).
[67][67] *Jackson v. Bellsouth Telecomms., Inc*., 181 F. Supp. 2d 1345, 1363 (S.D. Fla. 2001).
[68] Defendants also did not raise this defense in their Answer.
[69] See *N. Star Capital Acquisitions, LLC v. Krig*, 2009 U.S. Dist. LEXIS 34078 (M.D. Fla. Apr. 21, 2009) (refusing to apply the litigation privilege to a claim raised under a state statute where it " would eviscerate the [statutory protections]").
[70] See *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co*., 336 F. Supp. 2d 1239, 1268 (S.D. Fla. 2004) (declining to apply litigation privilege to Plaintiffs' federal RICO claims although claims arose from conduct during prior litigation).

        Erika Deutsch Rotbart, Esq.
        Florida Bar Number: 0047686

FLORIDA IMMIGRANT ADVOCACY CENTER
3000 Biscayne Blvd., Suite 400
Miami, Florida 33137
Telephone: 305.573.1106 ext. 1020
Facsimile: 305.576.6273
BY: <u>Mary Gundrum s/.</u>
    Mary Gundrum, Esq.
    Florida Bar Number: 0937339
BY: <u>Jennifer Hill s/.</u>
    Jennifer Hill
Florida Bar Number: 0041151

## *CERTIFICATE OF SERVICE*

**I HEREBY CERTIFY** that on **May 26, 2009**, the foregoing document was electronically filed with the Clerk of the court using CM/ECF. Because some materials are subject to a confidentiality agreement, the CM/ECF version was redacted, and a full version was filed under seal with the Court. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing. A non-redacted version also is being served by mail to maintain confidentiality.

>DEUTSCH ROTBART & ASSOCIATES, P.A.
>Counsel for Plaintiffs
>BY:    Erika Deutsch Rotbart s/.
>       Erika Deutsch Rotbart, Esq.
>       Florida Bar Number: 0047686
>
>FLORIDA IMMIGRANT ADVOCACY CENTER
>Counsel for Plaintiffs
>BY:    Mary Gundrum s/.
>       Mary Gundrum, Esq.
>       Florida Bar Number: 0937339
>       Jennifer Hill
>       Florida Bar Number:  0041151

**SERVICE LIST**
*ALEJANDRA RAMOS and MARIA ONELIA CASTRO*
*v. JAVIER HOYLE and PATRICIAL PERALES*
*CASE NO: 08-CV-21809 MARTINEZ/BROWN*

Stephen James Binhak, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
E-mail: binhaks@gtlaw.com

Sandra Millor, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsilimile: (305) 579-0717
E-mail: millors@gtlaw.com

Erika Deutsch Rotbart, Esq.
Deutsch Rotbart & Associates, P.A.
4755 Technology Way, Suite 106
Boca Raton, FL 33431
Telephone: 561.361.8010
Facsimile: 561.361.8086
E-mail: edrotbart@comcast.net

Mary Gundrum, Esq.
Jennifer Hill, Esq.
FL IMMIGRANT ADVOCACY CENTER
3000 Biscayne Blvd., Suite 400
Miami, Florida 33137
Telephone: 305.573.1106 ext. 1020
Facsimile: 305.576.6273
Email: mgundrum@fiacfla.org
Email: jhill@fiacfla.org