IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRA RAMOS RAMOS  　　　　　CASE NO.: 08-CV-21809
and MARIA ONELIA MACO CASTRO,  　　MARTINEZ/BROWN

　　　Plaintiffs,
v.

JAVIER HOYLE and PATRICIA
PERALES,

　　　Defendants.
_____ /

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO AMEND FINAL JUDGMENT

Plaintiffs Alejandra Ramos Ramos and Maria Onelia Maco Castro, by and through their undersigned counsel, hereby respond to *Defendants' Motion to Amend Final Judgment* (DE 176). For the reasons that follow, Defendants' motion should be denied in its entirety.

**I.　　Introduction**

Plaintiffs Ms. Ramos and Ms. Maco filed this case in June 2008, alleging (1) violation of the Fair Labor Standards Act, 29 U.S.C §§ 201 *et. seq* ("FLSA"), (2) violation of the Florida Minimum Wage Act, 2007 Fla. Stat. § 448.110 ("FMWA"), (3) breach of the Plaintiffs' employment contracts, (4) fraud, and (5) violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589 *et. seq* ("TVPRA").  In response, Defendants filed counterclaims against Ms. Ramos, alleging assault, battery, false imprisonment, and intentional infliction of emotional distress. Plaintiffs then filed a supplemental complaint alleging retaliation under the FLSA given that the counterclaims lacked a reasonable basis in law or fact and were filed with a retaliatory motive. On July 16, 2009, the Court entered summary judgment against

Defendants on all their counterclaims, and granted summary judgment to Plaintiff Ramos on her retaliation claim. (DE 149.) The remaining claims proceeded to trial.

Following a six-day jury trial, the jury returned a verdict for Plaintiffs on the FLSA, FMWA, breach of contract, TVPRA, and retaliation claims[1] and awarded damages consistent with the evidence and the jury instructions. (DE 173.) On August 10, 2009, the Court entered final judgment reflecting the jury's verdict. (DE 174.) On August 24, 2009, Defendants filed the instant motion, asking the Court to reduce the damages awarded by the jury. (DE 176.) For the reasons that follow, the motion should be denied.

## II.   Argument

### A.   Legal Standard

Defendants argue that the Court should reduce the damages the jury awarded to Plaintiffs based on Defendants' assertion that the verdict is "contrary to Florida law" and would do "manifest injustice." These arguments are without merit.

A motion to alter or amend a judgment constitutes an "extraordinary remedy" and should therefore be "employed sparingly." *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689 (M.D. Fla. 1994). The standard is particularly stringent when a party asks the Court to alter a jury's determinations of fact, as Defendants seek here.

The Eleventh Circuit has held that a judge considering a motion to alter or amend "must defer to the jury on the weight to be given to each witness's testimony." *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1558-9 (11th Cir. 1984). The judge thus allows the jury to play its proper role---determining what testimony it will credit----and avoids usurping the jury's role of "assess[ing] credibility where conflicting testimony has been presented during the trial." *Id.*

---

[1] During the jury trial, the Court ruled that the fraud claims were barred by the economic loss rule as a matter of law and granted judgment in Defendants' favor on those claims.

Indeed, the fact that "the jury could have drawn different inferences or conclusions" than a judge might feel are "more reasonable" is not enough to set aside a verdict under Rule 59(e). *Narcisse v. Illinois Cent. Gulf R. Co.*, 620 F.2d 544, 548 (5th Cir. 1980) (quoting *Tennant v. Peoria & Pekin Union Railway Co.*, 321 U.S. 29, 35, 64 S. Ct. 409, 88 L. Ed. 520 (1944)). Because "the jury [is] the traditional finder of the facts," the jury has the responsibility and authority to "weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc).

Although the decision whether to amend a judgment generally is committed to the sound discretion of the district court, that discretion is limited when the judgment is a jury's award of damages. In these circumstances, the court's obligation is to uphold the jury's award if there exists any reasonable basis to do so. *Motorola, Inc. v. Interdigital Technology Corp.*, 930 F.Supp. 952 (D.Del.1996), *affirmed in part, reversed in part* 121 F.3d 1461 (Fed.Cir. 1997).

Moreover, a motion to alter or amend must be denied when the movant only seeks to "relitigate old matters." *Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007). Simply "restat[ing] previous arguments" is insufficient. *Garcia v. United States (In re Garcia),* 2002 U.S. Dist. LEXIS 23962, at *2 (S.D. Fla. Nov. 4, 2002).

Similarly, a motion to alter must be denied when the movant seeks to raise issues that were not previously raised and therefore have been waived. *O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir. 1992) (denial of motion to amend appropriate "when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation.").

B.   **Ms. Ramos' FLSA / FMWA Award Was Appropriate**

Defendants argue that the jury committed clear error in awarding Ms. Ramos $ 36,887.00 in unpaid minimum wages, relying on the statute of limitations and the suggestion that the jury

should not have found the Defendants' FLSA violations willful or the limitations period equitably tolled. These arguments are without merit because (1) although the jury was instructed on the statute of limitations, Defendants had waived that defense by not raising it until after the close of evidence, and (2) there is no basis for the Court to disturb the jury's factual findings that Defendants' FLSA violations were willful and that any statute of limitations (on which the jury was instructed as Defendants requested over Plaintiffs' objection) was equitably tolled.

### 1. The FLSA/FMWA Statute of Limitations Do Not Apply

First, the FLSA statute of limitations defense does not apply in this case because it is an affirmative defense which was required to be pled to have any effect. *Day v. Liberty National Life Insurance Co.,* 122 F.3d 1012, 1015-16 (11th Cir. 1997) (failure to plead statute of limitations defense in answer or raise the defense before trial constitutes waiver); *Hodges v. United States*, 597 F.2d 1014, 1017 (5th Cir.1979) (defense not clearly preserved in pre-trial stipulation may be waived). As Plaintiffs argued to the Court, Defendants waived this defense by not raising it prior to trial---not in moving to dismiss the Amended Complaint, not in their Answer and Affirmative Defenses, not at summary judgment, not in the pre-trial stipulation, and in fact not even in their opening argument to the jury.[2] Had Defendants preserved the statute of limitations, surely they would have objected to the relevance of Ms. Ramos' detailed testimony as to her daily work duties, her hours of work, and how much she was paid throughout her employment with the Hoyles. They did not. To the contrary, Defendants cross-examined Ms. Ramos on that testimony, and testified themselves at great length as to Ms. Ramos' work duties, hours, and wages for the time period they later claimed was barred by the statute of limitations.

---

[2] It was not until Defendants' *closing* argument that counsel argued to the jury that Ms. Ramos could at most recover 3 *days* of unpaid wages for her FLSA claims based on the statute of limitations.

Every Circuit that has specifically considered the issue under the FLSA statute of limitations has held that failing to plead this affirmative defense results in waiver. *See Hodgson v. Humphries,* 454 F.2d 1279, 1284 (10th Cir. 1972) (FLSA statute of limitations is waived if not plead); *Mumblower v. Callicott*, 526 F.2d 1183, 1187 n. 5 (8th Cir. 1975); *Lopez v. Rodriguez*, 668 F.2d 1376 (D.C.Cir. 1981); *Venters v. City of Delphi,* 123 F.3d 956, 967-8 (7th Cir. 1997).

Although the Court initially ruled in Plaintiffs' favor that Defendants waived the statute of limitations and therefore should not be allowed the corresponding jury instruction, Defendants managed to persuade the Court to reverse itself by arguing disingenuously that the relevant provision *was not a statute of limitations at all*, but instead "simply a limit on the amount of damages recoverable." Defendants did not cite a case, however, and that is likely because this is a distinction without a difference. For, to say that the FLSA statute of limitations is a waivable affirmative defense would have no meaning if it meant that an employee could *prosecute* a suit for unpaid wages filed outside the statute of limitations so long as the defense was waived, but at the end of the day *recover no damages for it*.

Defendants' motion now exposes that eleventh hour sleight-of-hand. In their motion Defendants rightly describe the FLSA statute of limitations provision as what it is, a statute of limitations. (Mot. at 5.) The title of the provision itself is "Statute of Limitations." 29 U.S.C. § 255; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008) (citing FLSA statute of limitations). Thus, like any statute of limitations, the FLSA statute of limitations is an affirmative defense that is waived if not plead. *See* Fed.R.Civ.P. 8(c), 12(b); *see also Day*, 122 F.3d at 1015-16.

Defendants' reliance on cases that discuss the limitation of recovery based on the statute of limitations are entirely inapposite (Mot. at 5-6), since these did not involve the defendant's

<u>waiver of the statute of limitations defense</u>, as occurred in this case. In short, Defendants could have raised this defense at any time prior to trial in order to preserve it (and to give Plaintiffs notice), yet failed to do so. *See, e.g.*, *Braddock v. Madison County*, 34 F. Supp. 2d 1098, 1112-13 (S.D. Ind. 1998) (defendant-employer precluded from raising statute of limitations defense for the first time by attempting to amend answer day before trial; defense was waived); *Professional Firefighters Ass'n v. City of Clayton*, 759 F. Supp. 1408, 1414-15 (E.D. Mo. 1991).

Although it was available to them, Defendants plainly waived the statute of limitations defense. In light of the waiver, the jury should not have been given the standard instruction on the defense. That error, however, was harmless, given that the jury awarded Ms. Ramos the minimum wages due for the time that she worked.

Lastly, unlike the FLSA's 2-year statute of limitations generally and 3-year statute of limitations for willful violations, under the FMWA the statute of limitations is four (4) years. *See* 2007 Fla. Stat. § 448.110(3). As with the FLSA, Defendants did not raise the FMWA statute of limitations defense prior to trial---or indeed, even during trial or in their present motion to amend---and have waived that defense as well. The jury thus did not err in granting Ms. Ramos damages for unpaid minimum wages under FLSA and the FMWA.

> 2.  **The Court Should Not Disturb the Jury's Factual Finding That Defendants' FLSA Violations Were Willful and That Any Statute of Limitations Was Equitably Tolled**

To establish willfulness, an employee must show his or her employer knew its conduct was prohibited under the FLSA or acted with reckless disregard of whether the conduct was prohibited. *See* 29 U.S.C. § 255(a); *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168, 1175 (S.D. Fla. 2007). "Reckless disregard" may be shown by the employer's failure to make adequate

inquiry into the requirements for compliance with the FLSA.  See 5 C.F.R. § 551.104; *Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008).

The jury found that Defendants---sophisticated employers with university educations in the United States---failed to pay Ms. Ramos the minimum wage, and that these violations were willful.  Defendants, however, argue that "there was no evidence" the violations were willful because at the time, Ms. Ramos---a domestic worker with two years' education in Peru---did not notify *them* that she was not being paid consistent with U.S. legal requirements under the FLSA.[3]  Based on ample evidence adduced at trial, the Court should not disturb the jury's factual finding of willfulness.

During trial, Defendants Perales and Hoyle each testified that they were educated and had worked in the United States before and while employing Plaintiffs.  Ms. Perales specifically admitted she was aware of the minimum wage.  Mr. Hoyle admitted he was a sophisticated employer, testifying that he was a supervisor for IBM with responsibility for many employees, including more than 150 employees in Puerto Rico and the United States during the period of Plaintiffs' employment, and that he had access to attorneys.

Defendants further admitted that while employing Plaintiffs full-time, they took absolutely no steps to determine the requirements of, or assure their compliance with, American employment laws, such as by contacting the U.S. Department of Labor or seeking expert advice from the bevy of lawyers available to them.  Defendants admitted they failed to post any FLSA notice or otherwise provide Ms. Ramos with information about the FLSA to advise her of her minimum wage rights.

---

[3] In actuality, Plaintiff Ramos testified that she often had to ask Defendants for her wages to be paid, and that she was not paid at all after January 2005 despite repeatedly asking for her wages.

In addition, Defendants testified that they prepared an income tax filing for Ms. Ramos for the *first* full year of her employment – 2003 - and *at that time* maintained time records for her, though these were grossly inaccurate and incomplete. Defendants therefore were aware that, as employers, they had obligations under the law. Defendants, however, chose to disregard those obligations thereafter. At trial, Defendants admitted they did not file tax returns for Ms. Ramos after the first full year and that they did not report either Plaintiffs' income on their own tax returns, pay any employer taxes, prepare withholding statements for Plaintiffs, or provide Plaintiffs with W-2 forms at any time during their employment. Instead, they chose to pay Plaintiffs in cash for far fewer than the hours actually worked, failed to keep pay records, and made numerous "deductions" from Plaintiffs' pay without providing any accounting.

The jury therefore was presented ample evidence from which to determine that Defendants willfully violated the FLSA, either because they knew their conduct was unlawful under the FLSA or because they acted with reckless disregard of whether their conduct was lawful. Indeed, Defendants' admitted failure to inquire as to their responsibility as employers itself was sufficient for the jury to make the finding. *See* 5 C.F.R. § 551.104; *Morgan*, 551 F.3d at 1280-81 (employer's failure to inquire whether employees were exempt from FLSA constituted sufficient evidence of willfulness).

Although Plaintiffs maintain that Defendants waived any statute of limitations defense, there was also ample evidence for the jury's finding that any statute of limitations was equitably tolled. *See Secretary of Labor v. Labbe*, 319 Fed.Appx. 761 (11th Cir. 2008) (declining to dismiss FLSA complaint as time-barred because statute of limitations is affirmative defense that must be pled and proven, and statute of limitations may be equitably tolled).

"Equitable tolling" of the statute of limitations is available where plaintiffs have been prevented from enforcing their statutory rights within the limitations period due to inequitable circumstances. *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *CNA Fin. Corp. v. Brown*, 162 F.3d 1334 (11th Cir. 1998). Equitable tolling is available even where there is no evidence of explicit fraud or misrepresentation by the defendant. *See Hentosh v. Herman M. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999).

In *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483 (11th Cir. 1984), the Eleventh Circuit held that the statute of limitations in an employment discrimination case may be tolled (1) when the employer fails to post notice of an employee's statutory rights; and (2) throughout the statutory time the employee lacks general knowledge of his statutory rights and the means of obtaining knowledge of those statutory rights. 743 F.2d at 1486. The Eleventh Circuit held that before the statute can begin to run, the employee would have to both suspect a violation of the law and be "generally aware of his legal right to obtain redress for that wrong."

In this case, there was ample evidence for the jury's finding that any statute of limitations period was equitably tolled. Defendants admitted they did not post any FLSA notice or otherwise advise Ms. Ramos of her legal rights under the FLSA. In addition, Ms. Ramos testified that she had completed only two years of education in Peru, had very limited literacy in Spanish, and did not speak or write English. Ms. Ramos had never worked in the United States before and was coming to the United States for the first time as Defendants' domestic employee. While employed by Defendants, Ms. Ramos testified that she worked extraordinarily long hours virtually every day of the week, that Defendants restricted her movement and limited her

contacts outside the home,[4] and that she was afraid of the Hoyles, who withheld her passport and threatened to report her to immigration if she tried to leave. The jury was therefore entitled to conclude that Ms. Ramos had no reasonable way to know her statutory rights in the United States, nor have the means of obtaining knowledge of those rights, and that therefore any statute of limitations period was equitably tolled.

Moreover, Defendants actively misled Ms. Ramos about her employment rights. Although Defendants executed employment contracts with Ms. Ramos which specified an hourly rate above the minimum wage and promised a 40-hour work week and other benefits, Ms. Ramos testified that Mr. Hoyle told her the terms of the contract were "only for the embassy" and that they would have no effect in the United States. Defendants told Ms. Ramos she was not entitled to receive a monthly wage of more than $400 (during the first four months of her employment) or $500 (thereafter until February 2005). Defendants paid even this unlawful wage late and denied any obligation to pay in a timely manner. Mr. Hoyle also misled Ms. Ramos by making "deductions" from her pay for expenses such as travel and visa costs, without advising her that those deductions could not lawfully cause her net wages to fall below the minimum wage, which they did. In addition, Defendants promised higher wages to Ms. Ramos at two points in time – prior to the move to Key Biscayne and prior to Ms. Ramos' return from Peru in 2005 - but did not honor those promises either. Mr. Hoyle also told Ms. Ramos she was required to continue working for the Hoyles – under their terms -- for the duration of the "contract," which he told her was the same ten (10) year period for which Ms. Ramos' passport was valid. Ms. Ramos testified that Mr. Hoyle told her she had no right to her passport because he had paid for her to obtain the passport and visa to come to the United States.

---

[4] For example, Ms. Ramos testified that Ms. Perales instructed her not to talk to other nannies or anyone outside the home because they might put "bad" ideas in her head.

C.  **The Jury's Damages Awards Under the Contract And Minimum Wage Claims Are Consistent With The Evidence Adduced At Trial And Do Not Constitute A Double Recovery**

Next, Defendants argue that the fact the jury awarded Plaintiffs damages on both their minimum wage claims and their contract claims constitutes an impermissible double recovery. (Mot. At 7.) To the contrary, the damages award shows that the jury carefully evaluated the evidence and awarded damages for both (1) Defendants' failure to pay the contract rate of $7.00 per hour for 40 hours of work a week; and (2) Defendants' failure to pay the minimum wage for every hour worked thereafter. The verdict thus comported with the Court's instructions and is fully consistent with the evidence.

1.  **The Jury's Contract Damages Award Comports With The Evidence**

As to the breach of contract claim, the jury awarded Ms. Ramos $40,234.00 and Ms. Maco $24,869.00 in damages. Both awards comport with the evidence at trial.

Ms. Ramos' testimony reflected that she was employed by the Defendants for 154 weeks from 2002 to 2005.[5] Ms. Ramos further testified that over that three-year period, she did *not* work only for up to 10 weeks over the holidays in Peru.[6] Under the contract, Ms. Ramos should therefore have been paid $280.00 per week ($7.00 an hour for 40 hours a week) for approximately 144 weeks of work, for a total of $40,320.00. The jury's damage award of $40,234.00 was therefore consistent with the evidence[7].

Ms. Maco testified that worked for Defendants from April 7, 2006 to May 13, 2008, and that she performed work for the Hoyles during each of those weeks. Under the contract, Ms.

---

[5] Ms. Ramos was employed 18 weeks in 2002, 52 weeks in 2003, 52 weeks in 2004, and 32 weeks in 2005.
[6] Ms. Ramos testified she had roughly 1.5-2 weeks off in Peru during the 2002-03 holidays, 3-4 weeks off during the 2003-04 holidays, and 3-4 weeks off in the 2004-05 holidays for a total of a maximum possible 10 weeks off.
[7] Plaintiffs admit they were paid some wages during their period of employment, which are included in calculations laid out below in relation to the minimum wage awards for both Ms. Ramos and Ms. Maco. The jury, appropriately, does not seem to have deducted twice for the wages paid by deducting wages paid from both the contract and minimum wage awards, but only from the minimum wages owed.

Maco should have been paid $280.00 per week ($7.00 an hour for 40 hours a week) for 109 weeks of work[8] for a total of $30,520.00. The jury's award of $24,869.00, which may reflect that the jury excluded some weeks from the damage award, was therefore consistent with the evidence.

### 2. The Jury's Minimum Wage Awards Compensate Plaintiffs For The Additional Hours Worked

The jury's minimum wage awards represent compensation for the hours Plaintiffs worked above and beyond the contractual 40 hours a week; and in fact, fall well below the maximum that the jury could have awarded Plaintiffs under FLSA or the FMWA for all additional hours worked. Defendants' argument that this award reflects a double recovery therefore fails.

Plaintiffs testified that they worked far more hours each week than the forty (40) hours promised in their employment contracts. Plaintiffs performed active work in the form of childcare, cleaning, cooking, serving food, running errands, laundry, ironing, and other tasks assigned by Defendants. In addition to this "active work," Plaintiffs were also entitled to be compensated for the hours they were on-duty or on-call, because this constitutes "engaged to wait" time which is compensable under the FLSA. *See* 29 CFR §785.11 (defining as compensable all time in which an employer "knows or has reason to believe" an employee is working and thus all time in which employees are "suffered or permitted" to work); 29 CFR §785.15 (defining on duty time, including time in which employees are engaged to wait, as compensable); 29 CFR §785.17 (defining compensable on-call time during which an employee is "required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes"); 29 CFR §785.18 (defining compensable short break times); 29 C.F.R. § 785.22(a) and (b) (defining the conditions that must be met in order for the

---

[8] Ms. Maco was employed 38 weeks in 2006, 52 in 2007, and 19 in 2008.

employer to deduct time for sleep periods for employees are on duty for 24 hours or more but are subject to interruptions in their sleep); and 29 C.F.R. § 785.23 (defining the conditions under which live-in employees may be considered "off the clock," which include complete freedom from duties and freedom to leave the premises).[9]

Examples of "engaged to wait" time included Defendants' expectation that Plaintiffs would wake up with the children in the middle of the night and tend to their needs, whether that meant getting a bottle, changing a diaper, or rocking the child until he or she feel asleep again. Defendants also expected Plaintiffs to be available at all times to run errands, perform tasks as needed, and to wait when their assigned tasks could not immediately be performed (such as picking up a child from school or cleaning a party only after the last guest had left). Plaintiffs further testified they were not provided uninterrupted time to rest or designated meal breaks.

Specifically, Ms. Ramos testified she was not allowed any days off in 2002, and only about 4-6 hours off on Sundays thereafter. Ms. Ramos also testified that she routinely worked 6-6:30 in the morning to 11-12 at night, and that she was on-call the remainder of the time, including throughout the night to respond to Patrick's needs when he awoke. Ms. Ramos therefore worked 6.75 days per week throughout her employment, for as many as 24 hours a day consisting of approximately 17 hours a day of active work and up to 7 additional hours of compensable time.[10] Under the law, the jury was therefore entitled to find that Ms. Ramos

---

[9] *See also Blum v. Great Lakes Carbon Corp.*, 418 F. 2d 283 (C.A. Tex. 1969) (stating that "[i]n determining whether idle time is compensable, two factors to be considered are whether time is spent predominantly for employer's or employees' benefit, and whether time is of sufficient duration and taken under such conditions that is available to employees for their own use and purposes disassociated from their employment time.")

[10] Defendants mischaracterize the evidence at trial. They state that Ms. Ramos testified she worked only 5 ½ days per week, only until 10 at night, and was paid $800 per month. Neither Defendants nor Ms. Ramos testified to that schedule or rate of pay; it is at best a pastiche of statements about distinct points in time from different witnesses. The same can be said of the recital of evidence relating to Ms. Maco. She did not testify that she worked 5 ½ days per week, nor did she state she received $1000 in wages during the entire period, nor did either Plaintiff receive wages for their services consistently, have sufficient food, or enjoy various breaks each day.

[10] If one makes a more careful estimate, the figure is closer to 6.4 days/week.

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

should be compensated for as many as 162 hours a week (24 hours a day for 6.75 days a week). Deducting the 40 hours a week that should have been paid under the contract, the jury was entitled to find that Ms. Ramos earned as much as $103,124.16 in unpaid wages for the excess hours at the minimum wage rate of $5.87 per hour.[11]  Deducting the $14,100 in wages Ms. Ramos testified she was paid during her employment, the jury could have awarded Ms. Ramos as much as $89,024.16 in unpaid minimum wages for the excess hours.

The jury's award of $36,887.00 in unpaid minimum wages to Ms. Ramos was therefore consistent with the evidence and in fact far below the maximum amount the jury could have awarded under the law.  This award also did not amount to a double recovery, given that the jury was entitled to award Ms. Ramos more than twice the amount *even after deducting the 40 hours compensable under the contract.*

Ms. Maco testified that she worked from about 7 AM to 10 PM each day, for an average of 15 hours of active duty daily, and that she also remained on-call the remainder of the time she was in the Hoyles' home.  Ms. Maco testified she had no days off during the first 2 ½ months she worked for Defendants; roughly six (6) hours off per week late June 2006 through September 2007; and then a full day off per week from October 2007 to May 2008.  Ms. Maco thus worked an average of 6.25 days per week throughout her employment.[12]  Under the law, the jury was therefore entitled to find that Ms. Maco should have been paid the minimum wage for as many as 150 hours a week (6.25 days a week at 24 hours a day), or 110 hours a week after subtracting the 40 hours a week that were to be compensated under the contract.  Deducting the hours to be compensated under the contract, the jury was entitled to find that Ms. Maco should have been

---

[11]  $5.87 per hour times 122 hours per week times 144 weeks.
[12]  If one makes a more careful estimate, the figure is closer to 6.4 days/week.

paid as much as $79,134.00 for the excess hours of compensable time.[13]  Further deducting the $26,000 Ms. Maco testified she was paid by Defendants, the jury was entitled to award Ms. Maco as much as $53,134.00 in unpaid minimum wages.

The jury's award of $18,230.00 in unpaid minimum wages to Ms. Maco was therefore consistent with the evidence and in fact far below the maximum amount the jury could have awarded under the law.  This award also did not amount to a double recovery, given that the jury was entitled to award Ms. Maco more than twice the amount *even after deducting the 40 hours compensable under the contract.*

Based on the foregoing, Defendants' motion to reduce the jury's awards as to Plaintiffs' minimum wage and contract claims should be denied in its entirety.

### D. The Jury's Award of Modest Damages Under the TVPRA And For Retaliation Are Both Reasonable And Supported By the Evidence

Lastly, Defendants generally urge the Court to reverse the jury's finding that Plaintiffs were entitled to a modest award of $1,000 in damages each under the TVPRA, and that Ms. Ramos was entitled to an award of $2,500 on her retaliation claim.  As both awards were proper, the Court should not disturb the jury's findings.

*TVPRA Damages*

In holding Defendants liable on the TVPRA claim, the jury found that Defendants had "knowingly obtained Plaintiffs' labor or services by means of the abuse or threatened abuse of law or the legal process."  (*See* DE 173.)  As to the remedy, the Court instructed the jury that it could assess punitive damages if "the acts of the Defendants were done with malice or reckless

---

[13] This would represent 110 hours/week times 109 weeks x $6.60 per hour = $79,134.  The FMWA was $6.40/hour during the 38 weeks of 2006 when Ms. Maco worked with the Defendants, $6.67 for the 52 weeks of 2007, and $6.79 for the 19 weeks of 2008. The weighted average is thus $6.60.

indifference to the Plaintiffs' rights" as "punishment and as a deterrent to others." (DE 171 at 16). Plaintiffs presented ample evidence to support such a finding.

Plaintiffs both testified that they were subjected to insults, demeaning treatment and repeated threats by Defendants throughout their employment for the purpose of humiliating them, isolating them from others and generating fear of protest or escape. Specifically, Plaintiffs testified that Defendants threatened to report them to the police or to immigration for deportation. Each Plaintiff testified that as a result of these threats, she indeed felt afraid to leave an environment in which she labored without adequate pay, food or rest; without promised medical insurance and access to medical care; and without decent living conditions, instead made to work excessive hours, scrounge for food, and sleep in a converted closet adjacent to a trash chute. Each Plaintiff also testified that Defendants withheld her passport and visa---the very documents establishing each Plaintiff's identity, legal status in the United States, and ability to return to Peru freely---and refused to return those documents when requested. The evidence at trial further established that Defendants were sophisticated employers, both with university educations in the United States and access to a bevy of attorneys, yet they never advised Plaintiffs of their rights or provided access to legal counsel (even when Defendants were purportedly taking actions on Plaintiffs' behalf, such as Mr. Hoyle's application to "extend" Ms. Maco's work visa by applying for a tourist visa).

This evidence was more than sufficient to show that "the acts of the Defendants were done with malice or reckless indifference to the Plaintiffs' rights." Defendants' personal conduct toward Plaintiffs---in the form of insults, humiliation and threats---were plainly malicious. In light of Defendants' sophistication, far superior knowledge, and ready access to attorneys, the

jury was also entitled to conclude that Defendants' actions were done with reckless indifference to Plaintiffs' rights.

Defendants offer no authority for their suggestion that punitive damages were not available because the jury did not award compensatory damages on the TVPRA claim. Defendants' unsupported argument that punitive damages were inappropriate because Plaintiffs purportedly "did not put on any evidence to show *their* damages under the TVPRA" overlooks the fact that, as the Court instructed, the jury was entitled to award punitive damages as "punishment and as a deterrent to others." Defendants have offered no basis for the Court to disturb the jury's findings on the TVPRA claim.

### *Retaliation Damages*

Lastly, Defendants argue summarily that the Court should reverse the jury's modest award of $ 2,500 for the mental anguish she suffered as a result of Defendants' retaliation against her. *See Bogacki v. Buccaneers Ltd. P'ship,* 370 F. Supp. 2d 1201, 1203 (M.D. Fla. 2005); *Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108, 112 (7th Cir.1990); *Moore v. Freeman,* 355 F.3d 558, 564 (6th Cir.2004). Retaliation that causes mental anguish interferes with employee rights under the FLSA by deterring and discouraging employees from enforcing those rights. Courts have found that awarding damages for mental anguish suffered as a result of retaliation furthers the remedial and humanitarian purpose of the FLSA. *Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928, 939 (11th Cir.2000) (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944)).

In this case, after Ms. Ramos filed suit to enforce her rights under the FLSA, Defendants responded by spuriously alleging that Ms. Ramos had abused their child nearly four years before; charging her with assault, battery, intentional infliction of emotional distress, and false

imprisonment; and seeking more than $75,000 in damages against her (DE 45). The Court granted summary judgment on those claims in Ms. Ramos' favor, after concluding that they lacked a basis in fact or law and were filed with a retaliatory motive.

At trial, Ms. Ramos testified that Defendants' retaliation caused her to suffer anxiety, sleepless nights, and exhaustion. Ms. Ramos experienced everything from anger to humiliation to weeping and sadness. The stress caused by Defendants' action worsened her already-fragile health and made it more difficult to recover from kidney infections or other maladies she was experiencing as she worked diligently to prosecute this action and vindicate her FLSA rights. Based on this evidence, the jury was entitled to find that Ms. Ramos should be compensated $ 2,500 in damages for the mental anguish caused by Defendants' retaliation.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Amend the Final Judgment should be denied in its entirety.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
Counsel for Plaintiffs
4755 Technology Way, Suite 106
Boca Raton, Florida 33431
Telephone:    561.361.8010
Facsimile:    561.361.8086

BY:    Erika Deutsch Rotbart s/.
          Erika Deutsch Rotbart, Esq.
          Florida Bar No.: 0047686

FLORIDA IMMIGRANT ADVOCACY CENTER
Counsel for Plaintiffs
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137
Telephone: 305.573.1106 ext. 1020

        Facsimile: 305.576.6273

        BY: <u>Mary Gundrum s/.</u>
           Mary Gundrum, Esq.
           Florida Bar No.: 0937339
           Jennifer Hill
           <u>Jennifer Hill, s/.</u>
           Florida Bar No.:  0041151

### **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on **September 8, 2009**, the foregoing document was electronically filed with the Clerk of the court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        DEUTSCH ROTBART & ASSOCIATES, P.A.
        Counsel for Plaintiffs

        BY:    <u>Erika Deutsch Rotbart s/.</u>
             Erika Deutsch Rotbart, Esq.
             Florida Bar No.: 0047686

        FLORIDA IMMIGRANT ADVOCACY CENTER
        Counsel for Plaintiffs

        BY:    <u>Mary Gundrum s/.</u>
            Mary Gundrum, Esq.
            Florida Bar No.: 0937339
            <u>Jennifer Hill s/.</u>
            Jennifer Hill
             Florida Bar No.:  0041151

**SERVICE LIST**
*ALEJANDRA RAMOS and MARIA ONELIA MACO CASTRO*
*v. JAVIER HOYLE and PATRICIAL PERALES*
*CASE NO: 08-CV-21809 MARTINEZ/BROWN*

Stephen James Binhak, Esq.
Sandra Millor, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
E-mail: binhaks@gtlaw.com
E-mail: millors@gtlaw.com

Marry Gundrum, Esq.
Jennifer Hill, Esq.
FLORIDA IMMIGRANT ADVOCACY CENTER
3000 Biscayne Blvd., Suite 400
Miami, Florida 33137
Telephone: 305.573.1106 ext. 1020
Facsimile: 305.576.6273
Email: mgundrum@fiacfla.org
Email: jhill@fiacfla.org

Erika Deutsch Rotbart, Esq.
Deutsch Rotbart & Associates, P.A.
4755 Technology Way
Suite 106
Boca Raton, FL 33431
Telephone: 561.361.8010
Facsimile: 561.361.8086
E-mail: edrotbart@comcast.net