UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 08-21809-CIV-MARTINEZ-BROWN**

ALEJANDRA RAMOS and MARIA ONELIA MACO CASTRO,

Plaintiffs,

vs.

JAVIER HOYLE and PATRICIA PERALES,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO AMEND FINAL JUDGMENT**

THIS CAUSE came before the Court upon Defendants' Motion to Amend Final Judgment (D.E. No. 176). After careful consideration of the record as a whole, it is ORDERED that Defendants' motion is GRANTED IN PART AND DENIED IN PART, as set forth herein.

I. BACKGROUND

The present motion follows a jury trial, in which a verdict was rendered against Defendants, Javier Hoyle and Patricia Perales (collectively, "Defendants"), and in favor of Plaintiffs, Alejandra Ramos ("Ramos") and Maria Onelia Maco Castro ("Maco") (collectively, "Plaintiffs"). Plaintiffs prevailed on their claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Florida Minimum Wage Act ("FMWA"), Fla. Stat. §§ 448.01, *et seq.*; the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589, *et seq.*; and breach of an employment contract. In addition, the Court granted Plaintiff Ramos's motion for summary judgment on her claim that Defendants filed a lawsuit against her

in retaliation for asserting her unpaid wage claims, and the jury awarded her $2,500.00 in connection with this claim.

Defendants now contend that the Final Judgment should be amended to cure four defects that give rise to a manifest injustice, namely that (1) the jury's award for the FLSA and FMWA claims was excessive as a matter of law as to Plaintiff Ramos; (2) the jury's award of damages for the FLSA and FMWA violations on one hand, and for breach of an employment contract on the other, resulted in an impermissible double recovery as to both Plaintiffs; (3) the jury's award of punitive damages under the TVPRA was impermissible in light of the jury's finding that Plaintiffs suffered no compensatory damages; and (4) the jury's award of damages for Ms. Ramos's retaliation claim is unsupported by any evidence (Defts.' Mot., D.E. No. 176 at 1-2).

II. LEGAL STANDARD

Federal Rule of Civil Procedure 59 permits the Court to alter or amend a judgment upon a motion filed within 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). "While Rule 59(e) does not set forth any specific criteria, the courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Williams v. Cruise Ships Catering and Service International*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004). In this case, Defendants rely solely on their contention that the current judgment is manifestly unjust because it relies on a jury verdict that is contrary to applicable law and the facts presented. Defendants do not point to any change in controlling law or new evidence as a basis for the relief sought in this motion.

III. DISCUSSION

A. Plaintiffs' Recovery Was Not Duplicative

At the end of the trial, the jury awarded Ms. Ramos $40,234.00 on her breach of contract claim (D.E. No. 173 at 4, ¶ 9) and $36,887.00 for her minimum wage claims (D.E. No. 173 at 2, ¶ 2). The jury also awarded Ms. Maco $24,869.00 on her breach of contract claim and $18,230.00 for her minimum wage claims (D.E. No. 173 at 2 & 4, ¶¶ 2 & 9). Defendants contend that the jury impermissibly awarded damages under Plaintiffs' employment contracts and the minimum wage statutes for the same hours worked, resulting in a double recovery. Plaintiffs, on the other hand, contend that the verdict was proper because the jury awarded contract damages for the first 40 hours of work per week, while it awarded statutory minimum wage damages for all hours worked in excess of 40 hours per week.

At the outset, the undersigned notes that Defendants do not argue that the conclusion reached by the jury in its verdict was either implausible or unsupported by the evidence in the record. Rather, they simply interpose a construction of the verdict that suits their argument and state, in effect, that it is a superior construction than the one favored by Plaintiffs. This puts Defendants in a daunting position to begin with, because "it is difficult if not impossible to decipher what calculations the jury made to arrive at its verdict," so when "[b]oth sides seek to interpret the jury verdict for their own purposes[,] a party seeking to challenge the jury verdict bears a high burden to overcome." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, No. 97-7014-CIV, 2002 WL 34365827, at *2 (S.D. Fla. June 25, 2002). To the extent that Defendants' motion should be construed as a motion for remittitur, the undersigned finds that the jury's award is supported by the evidence and falls within the outer limits of Plaintiffs' maximum

recovery, in light of the evidence presented at trial. *See Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057-58 (S.D. Fla. 1995).

Defendants' construction of the jury's verdict that undergirds their double-recovery argument does not make sense in light of the jury's calculations as a whole. There is no dispute that Plaintiffs' employment contracts provided that Defendants would pay Plaintiffs $7.00 per hour in exchange for 40 hours of work per week. In essence, according to Defendants' interpretation of the verdict, the jury first calculated the number of unpaid hours worked by the Plaintiffs and then multiplied that number by $7.00 to determine the contract damages, while multiplying the same number of hours by the minimum wage to determine the FLSA and FMWA damages (Defts.' Mot., D.E. No. 176 at 7-8). If Defendants are correct, then it should be possible to calculate the number of hours the jury believed Plaintiffs worked without being appropriately paid either (1) by dividing each Plaintiff's total contract damages by $7.00 or (2) by dividing each Plaintiff's total minimum wage damages by the applicable minimum wage. For Defendants' theory to work, the result should be the same for each calculation, but this is not the case.

For example, Ms. Ramos was awarded $40,234.00 in breach of contract damages, and, since the contract provided that she would be paid $7.00 per hour, according to Defendants' interpretation of the verdict, that means the jury concluded that Ms. Ramos worked approximately 5,748 hours for which she was not reimbursed under the contract. In addition, Ms. Ramos was awarded $36,887.00 under the FLSA and FMWA. Since the minimum wage for

the vast majority of Ms. Ramos's term of employment was $5.15 per hour,[1] Defendants' theory of the case means that the jury determined Ms. Ramos to have worked approximately 7,162 hours for which she was not paid the minimum wage required by law. The fact that the jury found Ms. Ramos to have been entitled to unpaid wages for approximately 5,748 hours of work under the contract and that she was entitled to unpaid wages for approximately 7,162 hours of work under the minimum wage statutes indicates that the jury did not award Ms. Ramos duplicative damages with respect to her separate claims (for breach of contract and unpaid statutory minimum wages) based on the same hours worked, contrary to Defendants' argument.

Similarly, Ms. Maco was awarded $24,869.00 in breach of contract damages. Since the contract provided that she would be paid $7.00 per hour, Defendants calculations mean that the jury must have concluded that she worked approximately 3,553 hours without being paid under the contract. In addition, Ms. Maco was awarded $18,230.00 under the FLSA and FMWA. Since the blended minimum wage rate over Ms. Maco's term of employment was $6.62 per hour,[2] Defendants' theory of the case means that the jury determined Ms. Maco to have worked

---

[1] The minimum wage was $5.15 from the time that she began her employment in 2002 until May 2, 2005, at which time it was increased to $6.15. Ms. Ramos employment relationship with Defendants ended on June 27, 2005. Thus, out of the approximately 150 total weeks that Ms. Ramos worked for Defendants, the minimum wage was $5.15 for approximately eight weeks only. Any slight differences in the applicable minimum wage are minuscule and do not account for the disparities that should not be present if Defendants' proposed interpretation of the verdict is correct.

[2] The blended minimum wage is determined by averaging the applicable minimum wage rates during the term of Ms. Maco's employment, which covered at least part of the years 2006 ($6.40), 2007 ($6.67) and 2008 ($6.79). Once again, these figures are estimates -- which is justified and necessary in light of the fact that it is impossible to know the jury's exact calculations based on the evidence -- but the approximations, by any measure, do not explain the deviations in the number of hours worked that should not be present if Defendants' proposed interpretation of the verdict is correct.

2,754 hours for which she was not paid the minimum wage required by law. The fact that the jury found Ms. Maco to have been entitled to unpaid wages for approximately 3,553 hours of work under the contract and that she was entitled to unpaid wages for approximately 2,754 hours of work under the minimum wage statutes indicates that the jury did not award Ms. Ramos duplicative damages with respect to her separate claims (for breach of contract and unpaid statutory minimum wages) based on the same hours worked, contrary to Defendants' argument.

Plaintiffs are also correct that the evidence presented at trial supported the jury's findings that (1) the contract covered 40 hours of work per week, in which Plaintiffs were entitled to payment at $7.00 per hour for those hours; (2) during at least some weeks, Plaintiffs worked in excess of 40 hours; and (3) since any hours worked in excess of 40 hours per week were not covered by the contract, Plaintiffs were entitled to payment at the minimum wage for those hours.[3]

The verdict most likely reflects the jury's determination that Ms. Ramos was not sufficiently paid under the contract, and, in addition, that she worked approximately 7,162 additional hours[4] (over and above the 40 hours per week that were covered by the contract) for which she was not paid the minimum wage required by law. Given that the evidence supports the notion that Ms. Ramos worked for Defendants over approximately 144 weeks, this works out to be an additional 50 hours per week, which is well within the bounds of reasonableness based

---

[3] Plaintiffs did not seek any overtime wages at the time-and-a-half premium rate; they only sought unpaid wages at the minimum wage rate for all hours worked.

[4] This is the result of dividing the total minimum wage damages for Ms. Ramos ($36,887.00) by the minimum wage ($5.15) applicable for the majority of her term of employment.

upon the evidence presented. As Plaintiffs recount, the jury heard evidence that would support the conclusion that Ms. Ramos was actively engaged in work duties for approximately 16 hours per day; that she was expected to be "on-call" for all hours that she was not actively working; and, that she kept this schedule 7 days per week in 2002, while she was allowed to take 4-6 hours off per week in 2003-2005. Thus, in light of the fact that the jury was permitted to find that Ms. Ramos worked as many as 162 hours per week (between active work and "on-call" time), Plaintiffs assert -- and the undersigned agrees -- that it was reasonable for the jury to conclude that Ms. Ramos was underpaid for the 40 hours per week that she was required to work under the contract, and that she was also underpaid for an additional 50 hours of work per week that were not covered by the contract.[5]

The same holds true for Ms. Maco, whose minimum wage recovery ($18,230) reflects an underpayment over 2,754 hours beyond the 40 hours per week that were covered by the contract. Since the jury could find that she worked as many as 109 weeks, this works out to be approximately 25 extra hours per week, or 65 hours per week in total. As in Ms. Ramos's case, this is a reasonable determination, in light of the fact that the jury could have found, based on the evidence presented, that Ms. Maco worked as many as 110 hours per week, since she was regularly required to work approximately 15 hours per day; she was expected to be "on-call" for

---

[5] Given the complexity of the jury's possible calculations -- based on the number of hours and weeks that Plaintiffs could have worked, as well as any possible deductions, among other things -- the fact that Plaintiff testified that she actually received $14,100.00 worth of payment for her labor does not significantly alter the results. If the jury determined that Ms. Ramos worked for Defendants over 144 weeks, that means that Ms. Ramos received approximately $2.44 an hour if she worked 40 hours per week, or $1.09 if she worked 90 hours per week. The jury's calculations remain within the realm of reasonableness even accounting for the possibility that Plaintiff did receive some compensation for her work, given the fact that they are such minute amounts when viewed over the amount of time that Ms. Ramos worked.

all remaining hours; and she was rarely allowed any time off.[6]

In sum, Defendants' proposed interpretation of the jury's verdict does not make sense by its own terms. The Plaintiffs, on the other hand, have proposed an interpretation of the jury verdict that is both internally consistent and is supported by the evidence presented at trial. The jury verdict does not give rise to a manifest injustice because the jury was permitted to conclude that Plaintiffs were entitled to recover breach of contract damages for hours that they worked without pay up to 40 hours per week and that Plaintiffs were entitled to recover FLSA and FMWA damages for hours that they worked without pay over and above the 40 hours per week that were covered by the terms of the employment contracts.

B. Plaintiff Ramos's Award Under the FLSA and FMWA Was Not Excessive

The jury awarded Ms. Ramos $36,887.00 for unpaid minimum wages under the FLSA and FWMA, which Defendants assert was excessive as a matter of law based on the fact that Ms. Ramos's recovery was precluded -- or greatly restricted -- by virtue the applicable statute of limitations, which the jury failed to apply correctly.

1. The Parties' Positions

Specifically, Defendants argue, Ms. Ramos ended her employment relationship at 6:00 a.m. on June 27, 2005 and this lawsuit was filed on June 24, 2008, which means that the jury failed to heed the Court's instructions that Ms. Ramos's recovery must be limited to unpaid wages for (1) two years prior to the filing of the lawsuit; or (2) three years prior to the filing of

[6] The jury could have found that Ms. Maco did not receive any days off for the first 2.5 months of her employment; that she was allowed to take off 6 hours per week between June 2006 and September 2007; and that she was allowed to take off 24 hours per week from October 2007 to May 2008.

the lawsuit if Defendants' failure to pay minimum wages was willful or the result of a reckless disregard for their obligations under the law; (3) unless there were extraordinary circumstances to warrant the equitable tolling of the statute of limitations. First, Defendants argue, Ms. Ramos was not entitled to any recovery at all because all of her alleged damages occurred more than two years prior to the filing of the lawsuit and because there was no evidence that Defendants knew or showed reckless disregard for their duty to pay minimum wages. Second, Defendants argue, even if the statute of limitations is extended to three years based on their willful or reckless conduct, Ms. Ramos's damages for this period could total no more than $276.75. Third, Defendants argue, there were no extraordinary circumstances to justify the equitable tolling of the statute of limitations for the three-year period following her employment until the lawsuit was filed (Defts.' Mot., D.E. No. 176 at 4-7).

Plaintiffs contend that the jury was justified in finding that any applicable statute of limitations was equitably tolled because she had no reasonable way of obtaining knowledge of her rights under the minimum wage laws[7] and because Defendants actively misled Ms. Ramos about her right to minimum wages[8] (Pltfs.' Response, D.E. No. 178 at 9-10).

---

[7] In support of this argument, Plaintiffs assert that, among other things, (1) Defendants never expressly advised Ms. Ramos of her rights under the FLSA; (2) Ms. Ramos had only two years of formal education, limited Spanish literacy and did not speak or write English; (3) Ms. Ramos did not work in the United States prior to being employed by Defendants; and (4) Ms. Ramos worked long hours almost every day of the week and when she was not working, Defendants -- who inspired fear in her by, among other things, withholding her passport and threatening to deport her -- limited her movement and restricted her social interactions, including by specifically instructing her not to talk with individuals who might put "bad" ideas in her head.

[8] In support of this argument, Plaintiffs assert that Defendants, among other things, (1) told Ms. Ramos that the terms of her employment contract that set forth a pay rate that was compliant with the minimum wage laws were "only for the embassy" and were not binding in the United States; (2) told Ms. Ramos that she had no right to receive more than $400 per month for

2. Analysis

As Defendants' calculations make clear, implicit in the jury's verdict is the conclusion that the statute of limitations in this case was equitably tolled due to the presence of extraordinary circumstances and, thus, the core question for the Court is whether this finding must be altered in order to avoid a manifest injustice. "Under federal law, equitable tolling is available where (1) defendant's wrongful conduct prevented plaintiff from asserting the claim; or (2) extraordinary circumstances outside the plaintiff's control made it impossible to timely assert the claim. *Nat'l Coalition Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 360 (C.D. Cal. 1997) (citing *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1549 (N.D. Cal. 1987)). While the Supreme Court has cautioned that equitable tolling is a remedy to be used only sparingly, it has been "allowed . . . in situations where the complainant . . . has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95 (1990).

This is not a case in which Defendants made what amounted to a stray or idle threat that the filing of a minimum wage lawsuit would result in immigration consequences for Ms. Ramos. Rather, the jury could have construed the evidence in the record to conclude that throughout her three-year term of employment, Ms. Ramos was terrorized, controlled and manipulated by Defendants, who, among other things, claimed to own her immigration documents (July 29 Tr. at

---

her first four months of her employment and $500 per month thereafter until February 2005; (3) made impermissible deductions from her wages for expenses such as travel expenses and the cost of obtaining a visa; (4) promised Ms. Ramos higher wages, but failed to honor those promises; and (5) told Ms. Ramos that she was obligated to work for them for the entire ten-year period for which her passport was valid and that she had no right to her passport because the costs associated with obtaining her passport and visa were paid for by Defendants.

160; July 30 Tr. at 23));[9] who continually promised her increased wages and benefits, including medical insurance, without ever following through on those promises; who forced her to work on an almost-constant basis; who regularly threatened to turn her over to immigration authorities (July 30 Tr. at 22, 24); who prohibited her from maintaining the diet that she needed to control her diabetes (July 30 Tr. at 33); who withheld her wages in order to prevent her from leaving (July 30 Tr. at 37); who denied her medical treatment (July 30 Tr. at 39). And, significantly, when she called Defendants to request her passport after she stopped working for them, she was told that her passport had already been sent to immigration authorities, that he police were looking for her and that she would be deported. Ms. Ramos specifically testified that Defendants threatened her with deportation to Mexico, where she had no connections, rather than to her native Peru (July 30 Tr. at 53).

Thus, even though a litigant who was prevented from discovering her rights *during* her term of employment might ordinarily be expected to be capable of discovering her rights *after* the term of her employment, the jury in this case was justified in concluding that Ms. Ramos had no reasonable way to overcome Defendants' efforts to mislead her about her rights and the consequences of asserting them, given the extent to which Defendants abused, intimidated, threatened and manipulated her. The jury could find that Ms. Ramos was especially vulnerable to Defendants' machinations than an ordinary litigant and that she failed to assert her rights in a timely manner because she genuinely believed that doing so would result in retaliatory action by Defendants, and specifically would result in draconian immigration consequences.

---

[9] Citations to the transcript ("Tr.") of the trial proceedings refer to the Court's unofficial Realtime Transcript, as the docket reflects that neither party ordered an official transcript.

And, even though the efforts Ms. Ramos took to learn or to assert her rights after she separated from Defendants are sparsely described in the record, this is simply the result of Defendants' trial-by-ambush strategy, in which they failed to raise the statute of limitations defense upon which they now rely at any time prior to closing arguments. The jury was obviously entitled to find that Ms. Ramos lacked the ability to assert her claim *during* her term of employment because she was actively misled by Defendants. In addition, the jury could have concluded that she likewise lacked the ability to assert her claim *after* her term of employment because the extreme amount of psychological abuse that Ms. Ramos suffered during her employment made her unable to discover her rights and unable to overcome Defendants' threats she would be deported to a foreign country if she asserted her rights. And, finally, the undersigned will not disturb the jury's finding in light of the fact that Defendants essentially tricked Plaintiffs out of introducing additional evidence to establish extraordinary circumstances to justify the equitable tolling of the statute of limitations by failing to raise the issue at any time prior to closing arguments.[10]

C. Plaintiffs Cannot Recover Punitive Damages Under the TVPRA

Defendants argue that there was no evidence to support the jury's finding that Plaintiffs were entitled to $1,000.00 each in punitive damages under the TVPRA. Defendants specifically note that a punitive damages award is unsupportable in light of the fact that the jury did not award any compensatory damages under the TVPRA.

---

[10] Based on this conclusion, it is unnecessary to address Plaintiffs' alternative argument that the jury was warranted in finding grounds to extend the statute of limitations to three years based on Defendants' willful or reckless disregard for their obligation to pay minimum wages (Pltfs.' Response, D.E. No. 178 at 3-8).

The undersigned agrees that the jury's finding that Plaintiffs did not suffer any compensatory damages precludes a recovery of punitive damages under the TVPRA. This case is distinguishable from *E.E.O.C. v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998), where this Court determined that "[t]he existence of compensatory or nominal damages was not a prerequisite to an award of punitive damages against Defendant" in a Civil Rights Act lawsuit. That holding was dependent on the language of the statute, which specifically provided that punitive damages were recoverable if the plaintiff demonstrated that the defendant engaged in a discriminatory practice with malice or reckless indifference and "says nothing of requiring compensatory damages in order to receive punitive damages." *Id.*

The TVPRA, by contrast, contains no such language concerning punitive damages. Instead, it simply states that a victim "may bring a civil action . . . and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595. In the absence of any compensatory damages, the jury could not award Plaintiffs punitive damages under the TVPRA. *See Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 209 (4th Cir. 2009) ("[W]e have held, in accordance with the 'majority rule' that, absent statutory language to the contrary, punitive damages are not recoverable absent proof of actual damage"); *Powell v. Alexander*, 391 F.3d 1, 18 (1st Cir. 2004) ("In order to recover punitive damages, a plaintiff ordinarily must 'establish[ ] liability for either compensatory or nominal damages.'") (alteration in original).

D. Plaintiff Ramos Is Entitled to FLSA Retaliation Damages

Defendants' final argument is that there was no evidence to support the jury's finding that Ms. Ramos suffered $2,500.00 in damages as a result of Defendants' acts that led to the retaliation claim. Defendants fail to cite any legal or factual authority for their argument, and the

undersigned concludes that it is meritless. Emotional distress damages are recoverable pursuant to the anti-retaliation provisions of the FLSA, *see Bogacki v. Buccaneers Ltd. P'ship*, 370 F. Supp. 2d 1201, 1203 (M.D. Fla. 2005), *Moore v. Freeman*, 355 F.3d 558, 564 (6th Cir. 2004); *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.3d 108, 112 (7th Cir. 1990), and the jury was presented with extensive evidence that Ms. Ramos suffered emotional distress and mental anguish as a result of Defendants' baseless and retaliatory lawsuit that accused Ms. Ramos of, among other things, abusing their young son. Accordingly, based upon a review of the record as a whole and for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Amend Final Judgment (D.E. No. 176) is **GRANTED IN PART AND DENIED IN PART**. In light of the fact that the jury declined to award any compensatory damages under the TVPRA, an Amended Final Judgment shall be entered that reduces each Plaintiffs' award by $1,000.00 because they are not entitled to punitive damages under the TVPRA in the absence of any actual damages. Defendants' motion is denied in all other respects.[11]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19 day of February, 2010.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record

---

[11] The Amended Final Judgment will also reflect an award of liquidated damages under the FLSA, as set forth in this Court's companion Order granting Plaintiffs' Motion for Liquidated Damages (D.E. No. 175).